The CITY OF BAYTOWN, Texas,
Appellant-Appellee,

v.

Janet E. TOWNSEND, as next friend of
Yancy Zimbalist Alfred,
Appellee-Appellant.

No. 1447.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

March 9, 1977.

Rehearing Denied April 6, 1977.

Neel Richardson, City Atty., Scott Bounds, Asst. City Atty., Baytown, Michael G. Terry, Vinson, Elkins, Searls, Connally & Smith, Houston, for appellant-appellee.

Glenn Vickery, Vickery & Matthews, Ben A. Ramey, Houston, for appellee-appellant.

COULSON, Justice.

This is a personal injury suit.

Yancy Zimbalist Alfred, a minor, as plaintiff, acting through his mother, Janet E. Townsend, as his next friend, brought suit against the City of Baytown, as defendant, under the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19 (Supp. 1976–77). Alfred's left arm was severely lacerated on a bolt protruding from a net post on a tennis court which was constructed and maintained by the City. Trial was to a jury which found that Alfred was injured as a result of the negligence of the City and assessed total damages in the amount of $15,000. The trial court ordered a remittitur of $5,375 and entered judgment for Alfred against the City for $9,625. Alfred appeals the trial court's action in requiring a remittitur and the City appeals the merits of the case. We affirm the judgment of the trial court in all respects.

The tennis facilities were constructed by the City pursuant to an agreement between the City of Baytown and the Goose Creek Independent School District to provide for a park-playground to be used jointly by the City and by the School District as authorized by Tex.Rev.Civ.Stat.Ann. art. 6081t (1970). The park-playground was located at Travis Elementary School on land owned by the School District; the park-playground improvements including, but not limited to the tennis courts, were constructed, owned and maintained by the City. The tennis courts were completed in 1969. On February 15, 1972, during the school lunch period, Alfred was playing tag with a classmate on the playground. The classmate, being chased by Alfred, fell down on the tennis court and Alfred jumped over him and brushed against the net post on the tennis court. Alfred's left arm was severely lacerated when impaled on a threaded bolt one-half inch in diameter which protruded two to three inches from the net post. Alfred's wound required ninety-seven stitches to close. The injury healed slowly and left a hypertrophic scar approximately one inch wide and four and one-half inches long. Some contracture of the elbow joint had occurred at the time of trial. Increased contracture in the future is a medical probability. A plastic surgeon testified that Alfred's injury would require surgery for medical and cosmetic reasons, but that the surgery could not be performed effectively until Alfred attained physical maturity in approximately five years.

■ Leon Legler, principal of Travis Elementary School, testified to the condition of the net posts on the tennis courts at the time Alfred was injured. Legler referred to the offending bolt as being a portion of a "turnbuckle" used to raise and lower the tennis net. A diagram of the device which caused the injury to Alfred was drawn by Legler on a blackboard which was exhibited to the trial judge and jury. That diagram was not preserved in the record, and we cannot deduce from the statement of facts the exact nature of the device. A part of the device was the bolt which protruded two to three inches from the outside of the net post. It is undisputed that Alfred was injured when he inadvertently brushed against the net post and ran into the protruding bolt. Mr. Legler was unable to testify as to the period of time the bolt had been exposed in the manner that existed on February 15, 1972. Inasmuch as the trial court and jury had the benefit of important evidence not preserved in the record, this court is confronted with the review of an incomplete statement of facts. We must presume that there was evidence to support the jury's findings when we are confronted with an incomplete statement of facts. *Young v. Stafford*, 497 S.W.2d 76, 78 (Tex. Civ.App.-Houston [14th Dist.] 1973, no writ).

The Texas Tort Claims Act provides a broad waiver of sovereign immunity, which is then narrowed by a list of exceptions. "The result is essentially waiver in three general areas: use of publicly owned automobiles, premise defects, and injuries arising out of conditions or use of property." Greenhill and Murto, *Governmental Immunity*, 49 Texas L.Rev. 462, 468 (1971). The broad waiver provision of section 3 of the Act imposes liability on the state for death or personal injuries caused "from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state." Tex. Rev.Civ.Stat.Ann. art. 6252–19, § 3 (Supp. 1976–77). A major limitation on government liability results from the exclusion in section 18(b), which provides that, as to premise defects, the government owes a claimant only that duty owed by private persons to a licensee on private property.

The essence of the City's appeal is that the protruding bolt, if defective, was a premise defect, and therefore no duty was owed by the City to Alfred under the circumstances. The City relies on the supreme court decision in *State v. Tennison*, 509 S.W.2d 560 (Tex.Sup.1974). *Tennison* was a slip and fall case which arose from the negligent waxing of the floor in a state building at Camp Mabry. *Tennison* was a

premise defect case, and, under section 18(b) of the Tort Claims Act, the state owed Mrs. Tennison only that duty owed by private persons to a licensee. The supreme court held that as to a premise defect, the state must have actual knowledge of the defect or danger to the plaintiff and must be negligent in acting or failing to act to correct the condition or to warn the plaintiff of the danger.

■ The pleadings of neither Alfred nor the City reflect that this suit was prosecuted or defended on a premise defect theory. There is no allegation nor finding that the protruding bolt was a "premise defect." Therefore, section 18(b) and the *Tennison* case are inapplicable to the case at bar. *Torres v. State,* 476 S.W.2d 846, 848 (Tex. Civ.App.-Austin 1972, writ ref'd n. r. e.).

■ The protruding bolt which injured the boy was a simple machine; a mechanical device used to raise and lower the tennis net. It was tangible property, built and maintained by the City, that was in a defective and dangerous condition at the time of the incident made the basis of this suit. The City denies liability on the grounds that no evidence was introduced which showed that the City or any of its agents created or maintained this mechanical device in its dangerous and defective condition; i. e., the mechanism was not designed or installed in a defective manner and unknown persons at unknown times could have negligently adjusted the tennis nets to cause the bolt to protrude. However, there is no evidence in the record that the adjusting mechanism was not defective and dangerous when it was originally installed on the tennis courts. In the absence of evidence to the contrary, we cannot presume that this device was ever in a condition different from that found by the school principal the day of the accident. In reply to the plaintiff's request for admissions, the City admitted that it paid to have the tennis courts built and maintained. The plaintiff pleaded and proved that the City of Baytown, through its agents and employees, built and maintained an inherently dangerous mechanism on the tennis courts.

The City defended on the grounds that this device was an open and obvious hazard and Alfred was contributorily negligent in causing the accident. There is no evidence that Alfred was misbehaving or was not playing in a proper area of the playground at the time of the accident. The jury found the City negligent and absolved Alfred of contributory negligence. There is ample evidence in the record to support both findings.

This case is governed by the decisions in *Lowe v. Texas Tech. Univ.,* 540 S.W.2d 297 (Tex.Sup.1976); *Mokry v. Univ. of Texas Health Science Center at Dallas,* 529 S.W.2d 802 (Tex.Civ.App.-Dallas 1975, writ ref'd n. r. e.); and *McGuire v. Overton Memorial Hospital,* 514 S.W.2d 79 (Tex.Civ.App.-Tyler), *writ ref'd n. r. e. per curiam,* 518 S.W.2d 528 (Tex.Sup.1975). In *McGuire,* the plaintiff sued a city operated hospital for injuries sustained when he fell out of a bed not equipped with bedrails. McGuire claimed his case was governed by the broad waiver of immunity in section 3 of the Act. In its per curiam opinion, the supreme court expressly held that McGuire's petition stated a cause of action under the Act.

> We believe that injuries proximately caused by negligently providing a bed without bed rails are proximately caused from some condition or some use of tangible property under circumstances where a private person would be liable. Therefore, if the Hospital is found negligent in providing a bed without guard rails, it may not assert governmental immunity to avoid liability . . . . 518 S.W.2d at 529.

In *Mokry,* the plaintiff sued the University of Texas Health Science Center for the loss of an eyeball which was washed down a drain in the process of a pathological examination to determine whether the eye was cancerous. The court of civil appeals held that Mokry's allegations that he suffered personal injuries as a result of the negligence of employees of the State in the use of tangible property owned by the State at the Health Science Center recited a valid cause of action under the Tort Claims Act.

The language of the *Mokry* and *McGuire* opinions was expressly approved by the supreme court in *Lowe v. Texas Tech Univ., supra.* Lowe alleged that he sustained permanent injuries while playing varsity football for Texas Tech. He alleged that coaches and trainers of the Texas Tech football team were negligent in several respects; one of which was furnishing equipment, uniforms, and pads which were defective. The supreme court held that Texas Tech would not be immune from liability if it furnished defective equipment or failed to furnish sufficient protective equipment to Lowe.

As to the first, we hold that the affirmative allegation of furnishing defective equipment to Lowe states a case within the statutory waiver of immunity arising from some condition or some use of tangible property. It is further apparent that a failure to furnish proper protective equipment for Lowe's injured knee, if such was the case, is not distinguishable, in so far as the problem at hand is concerned, from the failure to provide bed rails for a hospital bed in *McGuire,* or from the failure to provide protective items of laboratory equipment in *Mokry.* . . . So we also hold that Lowe's allegations of a negligent failure to furnish him proper protective items of personal property, to be used as a part of the uniform furnished him, bring his case within the statutory waiver of immunity arising from some condition or some use of personal property. 540 S.W.2d at 300.

■ The simple mechanical device used to adjust the tennis nets in this case is legally indistinguishable from the hospital bed in *McGuire,* the laboratory equipment in *Mokry,* and the football uniform in *Lowe.* Each case arose from some condition or some use of tangible real or personal property, for which the State of Texas and its subdivisions are liable under the Tort Claims Act.

■ The City contends that the trial court erred in submitting the case to the jury under an ordinary negligence charge because the City's duty to plaintiff, if any, is limited by section 18(b) of article 6252–19 to that duty owed by private persons to a licensee. *See Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 455 (Tex.Sup.1972). This charge would have been improper had the plaintiffs alleged that the injuries were caused by a premise defect. However, section 18(b) of the Act limits the duty owed to plaintiffs only if a premise defect is involved. *Torres v. State,* 476 S.W.2d 846, 848 (Tex.Civ.App.-Austin 1972, writ ref'd n. r. e.). Therefore, an ordinary negligence charge was proper under the circumstances.

■ The City further contends that the trial court erred in submitting an ordinary negligence charge because it is global and fails to require plaintiff to prove a prima facie premise defect case. As discussed earlier, this presumes that the plaintiff grounded his suit on a premise defect theory, which he did not. Moreover, the trial court has considerable discretion in determining which issues are proper in submission of its charge. Tex.R.Civ.P. 277. The special issue submitted by the trial court is as follows:

"Special Issue no. 1"
"Whose negligence, if any, do you find from a preponderance of the evidence proximately caused the incident made the basis of this suit?"
Answer (a) The defendant CITY OF BAYTOWN, Texas

Answer
(b) The plaintiff, YANCY ALFRED;

Answer
(c) Both".

To which the jury answered:
"(a) The defendant, CITY OF BAYTOWN, Texas."

This form of special issue submission was expressly approved in *Members Mutual Ins. Co. v. Muckelroy,* 523 S.W.2d 77, 82 (Tex. Civ.App.-Houston [1st Dist.] 1975, writ ref'd n. r. e.). The plaintiff did not ground his suit on a premise defect, and the submission of the ordinary negligence charge in this form was within the discretion of the trial court.

The City alleges that the trial court committed fundamental error because its judgment contravenes the legislature's express intent to limit governmental liability for injuries arising from the use of school premises by children. Similarly, the City alleges fundamental error because the trial court's judgment effectively contravenes the legislature's express intent to allow schools and cities to jointly establish, maintain, construct, and operate park facilities.

■ "[A]n error which directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this state, is a fundamental error." *Ramsey v. Dunlop,* 146 Tex. 196, 205 S.W.2d 979, 983 (Tex.Sup. 1947); *See* Hatchell and Calvert, *Some Problems of Supreme Court Review,* 6 St. Mary's L.J. 303, 307 (1974); Hodges, *Preparation for Appellate Complaint,* 12 Hous.L. Rev. 799, 816 (1975). This court is aware of the special treatment afforded school districts under the Tort Claims Act.

> Perhaps the most significant concession was that achieved by the school districts, whose liability was limited to motor vehicles. Since the use of school premises by children is, of course, extensive, this provision creates a large exception to the Act's general elimination of governmental immunity for premise defects. Greenhill and Murto, *Governmental Immunity,* 49 Texas L.Rev. 462, 468 (1971).

The City correctly asserts that this plaintiff should not be permitted to circumvent the Act and thereby obtain relief which the legislature has specifically denied. *Torres v. State,* 476 S.W.2d 846, 849 (Tex.Civ.App.-Austin 1972, writ ref'd n. r. e.); Tex.Rev. Civ.Stat.Ann. art. 6252-19, § 19A (Supp. 1976-77).

■ However, the present controversy is clearly distinguishable from the *Torres* case. The injury in *Torres* was allegedly caused by the negligence of personnel at the Texas School for the Blind. The plaintiff in *Torres* sued the Central Education Agency and the State instead of the School District in order to avoid the operation of section 19A, and that attempt to circum-

vent the statutory exclusion was rejected. Alfred has not attempted to defeat the legislative purpose behind section 19A. The City built and maintained the tennis courts where the injury occurred and was, therefore, the party responsible for the injuries inflicted by this defective mechanical device. Imposing liability on the City of Baytown for injuries caused by the defective design and maintenance of its property does not erode the broad immunity retained by school districts under the Act.

We also reject the City's contention that imposing liability under these circumstances undermines the legislative intent to encourage schools and cities to jointly operate recreational facilities. Tex.Rev.Civ.Stat. Ann. art. 6081t (1970). Presumably, cities and school districts both benefit from the joint operation of recreational facilities, since the duplicitous expenditure of public funds is minimized. The City would have been liable had this accident occurred on a tennis court on land owned by the City of Baytown. We find no legislative intent to decrease the liability of municipalities, which is the practical effect of construing article 6081t together with the school district exclusion of section 19A of article 6252-19, as urged by City.

■ Alfred complains of the remittitur of $5,375 in medical expenses ordered by the trial court. In reviewing the propriety of the lower court's remittitur order, this court must apply the strict standard of whether the trial court abused its discretion. *Flanigan v. Carswell,* 159 Tex. 598, 324 S.W.2d 835, 840 (Tex.Sup.1959).

■ The doctor could not testify with certainty whether one, two, or three operations would be necessary to complete plastic surgery on Alfred. There was sufficient evidence for the jury to conclude that two, and only two, operations would in reasonable medical probability be necessary. The doctor testified in terms of ranges of expenses that would be incurred by Alfred as a result of the two operations. Allowing the maximum expenditure and hospital stay that the doctor suggested for each opera-

tion, the total medical expenses to be incurred were $2,625. There was no evidence of probative value that would indicate what the expenses would be for these operations at the time that they were to be performed. The jury awarded $8,000 for future medical expenses. The trial court ordered a remittitur of $5,375, which allowed the plaintiff the maximum award supported by the record. With the exception of a casual reference by the doctor to the escalating costs of medical care, the $8,000 jury award was based on mere conjecture. In light of the whole record, we cannot find that the trial court abused its discretion in ordering the remittitur.

All points of error and all counterpoints have been considered and are overruled.

Affirmed.