## TEXAS DEPARTMENT OF TRANSPORTATION, Appellant,

v.

## Scott Hamilton HENSON, Appellee.

### No. C14–91–01311–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 12, 1992.

Rehearing Denied Dec. 23, 1992.

Richard Mason, Mark Heidenheimer, Austin, for appellant.

Richard N. Laminack, Thomas W. Pirtle, Houston, for appellee.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from a judgment in favor of appellee for damages of $100,000.

Scott Henson, appellee, brought a personal injury suit against the State of Texas, by and through the Texas Department of Transportation, formerly known as the State Department of Highways and Public Transportation. Suit was brought under the Texas Tort Claims Act for negligence involving some condition or some use of personal property. TEX.REV.CIV.STAT.ANN. art. 6252–19 § 3 (Vernon 1976).[1]

On September 6, 1981, appellee, while driving his pickup truck, struck two barrel-sign devices on State Highway 288. The 55–gallon orange and white barrels are used as warning devices on many roads in Texas. A barrel-sign consists of a warning sign panel attached to a vertical wooden post that is secured to the inside of a 30 or 55–gallon drum.

At the time of appellee's one-car accident, eleven barrel-signs were used on a portion of Highway 288 to delineate where a lane under construction curved onto another lane. MICA Corporation, the original contractor, constructed the devices using bolts to secure both the signs and the posts. In April 1981, appellant assumed the maintenance of the devices.

When appellee's vehicle struck two of the barrels, the signs separated from the vertical posts and went through the windshield of appellee's vehicle. One of the signs struck appellee and was imbedded in his forehead four inches. Appellee suffered brain damage and disfigurement. Before appellee's accident, several of the barrel-signs were struck by motorists and replaced by appellant. Appellant constructed the replacement devices using nails instead of bolts to secure the warning sign panels to the posts. Appellee argued

---

1. Now codified as TEX.CIV.PRAC. & REM.CODE ANN. § 101.021, *et seq.* (Vernon Supp.1992).

the State was negligent because it used nails instead of bolts for the construction.

The jury found appellant negligent and also found appellee suffered $885,000 in damages. Appellee's damages were reduced to $100,000 by the trial court pursuant to the Texas Tort Claims Act. *Id.*

■ Before addressing appellant's sole point of error, it is necessary to determine if appellee's claim states a cause of action that can be brought properly under the Texas Tort Claims Act.

Section 13 requires that the provisions of the act be "... liberally construed to achieve the purposes hereof." TEX.REV.CIV. STAT.ANN. art. 6252–19 § 13 (Vernon 1976). The stated purposes of the act include: "to make liable for tort claims for personal injury all units of government in Texas and setting certain limits; abolishing certain immunities of the sovereign to suit, and granting permission for such suit; ..." TEX.REV.CIV.STAT.ANN. art. 6252–19 (Vernon 1976).

Section 3 provides for waiver of governmental immunity in three general areas: use of publicly owned automobiles; premises defects; and injuries arising out of conditions or use of property. *Lowe v. Texas Tech University*, 540 S.W.2d 297, 298 (Tex. 1976).

The first part of § 3, deals with injuries or death arising from the operation or use of a motor-driven vehicle and motor-driven equipment and refers to acts that are "proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office". TEX.REV.CIV.STAT. ANN. art. 6252–19 § 3 (Vernon 1976). Appellee's claim does not involve a governmental unit's operation or use of a motor-driven vehicle or motor-driven equipment; therefore, the State can be held liable under the act only if appellee's injuries arose from some condition or some use of property. The second part of § 3 states:

> ... death or personal injuries *so caused* from some *condition* or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state....

*Id.* (emphasis supplied).

Courts have struggled with the meaning of the words "so caused" and "condition" as used in this part of § 3. The court in *Lowe* determined "so caused" meant "proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office ..." 540 S.W.2d at 299. Appellee's amended petition alleges his injuries were proximately caused by the negligence of appellant and the jury found the State's negligence did proximately cause Scott Henson's injuries. We find appellee's cause of action meets the interpretation of "so caused" as used in § 3.

The word "condition" is not as clear as to its meaning and proper interpretation. The concurring opinion in *Lowe v. Texas Tech University* stated "The statutory language 'condition or use' of property implies that such property was furnished, was in bad or defective condition or was wrongly used." 540 S.W.2d at 302. This is a broad interpretation of "condition" as used in this section.

This court, in *Creek v. Department of Highways & Public Transp.*, 826 S.W.2d 797 (Tex.App.—Houston [14th Dist.] 1992, writ denied), following the rationale of *Lawson v. Estate of McDonald*, 524 S.W.2d 351 (Tex.App.—Waco 1975, writ ref'd n.r.e.), found that, when applied to cases involving traffic signs, the word "condition" refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the travelling public. 826 S.W.2d at 802.

Both *Lawson* and *Creek* involved injuries sustained because stop signs were either missing or in a down condition. In *Lawson*, an automobile accident occurred at an intersection between Mr. and Mrs. Lawson in one vehicle, and Mr. McDonald in another vehicle. The stop sign that should have been in place as Mr. McDonald approached the intersection had been removed by van-

dals. The Lawsons asserted the stop sign was in a dangerous condition because it was easily removable and because the State Highway Department was aware of this condition. 524 S.W.2d at 356. The court held the condition referred to in the statute was not intended to refer to the State's installation or maintenance of a sign insofar as ease of its removal by thieves was concerned. *Id.* at 356.

In *Creek,* a fatal accident occurred because of a collision at an intersection where a traffic control sign was in a down condition. Appellants maintained the stop sign was improperly installed because it did not have sufficient concrete around the two inch pipe to which the stop sign was secured to hold the sign upright. 826 S.W.2d at 799. The court found the State would be liable only if it had knowledge the sign was not performing its function. *Id.* at 802.

In both *Lawson* and *Creek* this court's definition of condition was narrowly construed, restrictive and applied to the removal or destruction of signs. The only function of the stop signs was to serve as a traffic control device. Under this definition it is necessary to determine if the State maintained the barrel-signs in a condition sufficient to perform properly the functions for which they were relied upon by the travelling public.

The State Department of Highways and Public Transportation's long-term goal "is to reduce traffic crashes and the resulting deaths, injuries, and property damage to the lowest possible level." 43 TEX.AD-MIN.CODE § 25.904.

A highway department's interoffice memo entered at trial stated the traffic control devices placed in effect at this particular location conformed both to the State's *Manual on Uniform Traffic Control Devices for Streets and Highways* and to the guidelines and standards endorsed and issued by the Federal Highway Administrator. An expert witness testified the Federal Highway standards require that basic hardware used to erect signs consist of bolts, washers, clamps, fittings, and brackets. These were to be used to fasten the sign to the post and to solidify the connection so that wind, vandals, or the *impact by outside forces* did not destroy or degrade the intended use of the sign. The standards require the fasteners and braces be designed to insure that the signs remain attached to the post throughout the impact sequence should they be impacted by an errant vehicle. The witness testified this indicated there would be possible impacts.

The expert witness also testified the subcommittee on bridges and structures of the American Association of State Highway and Transportation Officials (AASHTO) requires breakaway supports be designed to yield when struck by a vehicle, thereby minimizing injury to the occupants of the vehicle and damage to the vehicle itself.

The term "breakaway supports" refers to all types of signs, and traffic signal supports designed to be safely displaced under vehicle impacts. The expert witness testified a barrel-sign is a breakaway barrier and is designed to move and not completely damage the vehicle or injure the occupants therein.

The witness further testified AASHTO determined the standards after recognizing that signs going through windshields when hit were a hazard. The AASHTO manual stated the structures should also be designed to prevent the structure or its parts from penetrating the vehicle occupant compartment. AASHTO established these standards after crashes with some sign installations resulted in the sign panels or sign panels and their support penetrating the windshields of impacting vehicles. AASHTO established standards for increasing the strength of the support to panel attachments to reduce the chances of a sign penetrating a windshield. Hitting these barrels is a recognized hazard.

The travelling public is aware that in many situations it is better to hit these barrels than to run off a road under construction, run off an overpass on the highway, or hit an on-coming car. The specifications from the State Department of

Highways and Public Transportation, *Barricade and Construction Standards*, state the barrel-drums should not be weighted with sand, water or other material to the extent that would make them dangerous to motorists. The highway department obviously anticipates motorists hitting the barrels. Testimony at trial established that before appellee's accident, several of the barrels had been hit by motorists.

The barrel-signs have two functions: to warn motorists of road conditions and to protect motorists from injury or death should it be necessary for a motorist to hit them, in other words, to serve as crash-barrels. The barrel-signs should not create a hazard greater than the hazard the sign is warning about. The State did not maintain the barrel-signs in a condition sufficient to properly perform the functions relied upon by the travelling public.

The Tort Claims Act holds the governmental unit liable for any malfunction, absence or condition for which the governmental unit has notice unless the absence, condition, or malfunction is corrected within a reasonable time after notice. TEX.REV. CIV.STAT.ANN. art. 6252–19 § 14(12) (Vernon 1976). The State created a dangerous condition not visible to the driving public. Appellant, by creating the condition of the barrel-signs is deemed to have actual notice of the defect. Appellee had no notice or knowledge of the defect. Appellant had a duty to warn appellee and other motorists or to make the condition reasonably safe. *Prairie View A & M University v. Thomas*, 684 S.W.2d 169 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

We find the evidence supports the jury finding that the injury suffered by appellee was proximately caused by appellant's negligence. The barrel-signs were not maintained in a condition sufficient to perform properly the functions of traffic control for which they were relied upon by the travelling public; the State had notice of the defect; and the State had a duty either to warn appellee or make the condition reasonably safe. Appellee's claim was properly brought under the Texas Tort Claims Act.

In its sole point of error, appellant complains the trial court erred by submitting a jury charge based upon general negligence law instead of a charge based upon premise liability law. Appellant argues the barrel-signs were part of the premises of the highway and appellee's claim arises from a premise defect. Appellee argues the claim arose out of a condition of property and not from a premise defect.

■ As a premise defect claim, appellee is owed the duty a private person owes to a licensee on private property. TEX.REV.CIV. STAT.ANN. art. 6252–19 § 18(b) (Vernon 1976). A licensor must avoid injuring a licensee by willful, wanton or grossly negligent conduct. When the licensor has actual knowledge of a dangerous condition and the licensee does not, the licensor's duty is to warn the licensee or make the condition reasonably safe. 684 S.W.2d at 170.

■ Because the Texas Tort Claims Act does not define "premises defects" the common and ordinary meaning is applied. *Billstrom v. Memorial Medical Center*, 598 S.W.2d 642 (Tex.App.—Corpus Christi 1980, no writ). The word "premises" is commonly defined as "a building or part of a building with its grounds or other appurtenances." *Id.* at 646. A legal definition of premises is "Lands and tenements; an estate, including land and buildings thereon; ... Land and its appurtenances." *Id.* at 646. Appellant argues the barrel-signs were added to the land, are appurtenances to the land and are part of the premises.

There are numerous cases involving premise defects. Unfortunately, the cases do not establish set guidelines or factors to determine what is or what is not a premise defect. One factor, however, that the courts examine is the permanent or temporary nature of the item in question. In *Harris County v. Dowlearn*, 489 S.W.2d 140 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.), appellee was injured when an unattached wall panel used as a room divider in the county courthouse fell on her. The court found the claim was not based on a premise defect. *Id.* at 147.

In *Billstrom,* a mental patient was injured when he fell to the ground after removing a security screen and attempting to lower himself from a window. The court found the screen and window analogous to a floor in a building and determined the claim arose from a premise defect. 598 S.W.2d at 647.

In *City of Baytown v. Townsend,* 548. S.W.2d 935 (Tex.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.), appellee's arm was severely lacerated on a bolt protruding from a net post on a tennis court constructed, owned and maintained by the city. The bolt was part of a turnbuckle used to raise and lower the tennis net. On appeal, the city argued that the protruding bolt, if defective, was a premise defect, and therefore no duty was owed by the city to appellee. *Id.* at 938. The court found the protruding bolt was a simple machine; a mechanical device used to raise and lower the tennis net. It was tangible property, built and maintained by the city and was in a defective and dangerous condition at the time of the incidence. *Id.* at 939.

Similar to the unattached wall panel, the barrel-signs were moveable, portable and temporary in nature, much like other construction equipment. The barrel-signs, unlike a window and screen or a floor in a building, were not intended to be a permanent part of the highway. Also, similar to the bolt protruding from the turnbuckle in *City of Baytown,* the barrel-signs were simple devices constructed and maintained by appellant to delineate traffic through a construction area. We find the barrel-signs to be tangible personal property and the trial court did not err in submitting a jury charge of general negligence.

It is important to note two exceptions apply to the licensor-licensee limitation of duty in a premise defect case brought under the Texas Tort Claims Act. The limitation does not apply "... to the duty to warn of special defects ... nor shall it apply to any such duty to warn of the absence, condition, or malfunction of traf-

fic signs, signals, or warning devices...." TEX.REV.CIV.STAT.ANN. art. 6252–19 § 18(b) (Vernon 1976). One federal case has interpreted this limitation to mean that the Texas Legislature did not intend for the limited licensee rationale to apply to use of state highways where the safety of the traveling public is concerned. *Flores v. Norton & Ramsey Line, Inc.,* 352 F.Supp. 150, 155 (1972).

The barrel-signs clearly are warning devices. They were used to warn motorists that the lane ended and curved onto an adjacent lane. Even if we determined the barrel-signs to be a premise defect, which we do not, the exception to the limitation of duty would apply in this case and the trial court's charge of general negligence would not be in error.

We affirm the judgment of the trial court.

ROBERTSON, Justice, dissenting.

With all due respect to the majority, they have construed the Texas Tort Claims Act in a way it has never before been construed, and have thereby created liability under circumstances where liability has not been provided nor immunity waived by the Act. I therefore respectfully dissent.

Appellant's First Amended Petition, upon which trial was had, only alleged the following as actionable negligence:[1]

## II.

On or about September 5, 1981, the Plaintiff was driving his vehicle on the 14900 block of State Highway 288 in a northerly direction in Harris County, Texas. Plaintiff collided with barriers placed on the roadway by the named Defendants. As a result of said collision, the Plaintiff sustained serious injuries. These injuries were proximately caused by the negligence of the named Defendants. Nothing that Plaintiff did or failed to do caused, or in any way, contributed to the cause of the incident in

---

1. Named as other defendants in the lawsuit were T.L. James & Co., Inc., J.W. McKinney [sic] and MICA Corporation. The claims against these non-governmental defendants were dismissed prior to trial.

question. To the contrary, the incident and injuries suffered by the Plaintiff were the proximate result of the negligence of said Defendants. The STATE OF TEXAS was on actual notice that the barriers, which were being maintained by the STATE OF TEXAS at the time of the incident made the basis of this lawsuit, had been hit many times by motorists. As a result of the STATE OF TEXAS' negligence, these barriers became unreasonably dangerous to the travelling public. The unreasonably dangerous condition of these barriers were the proximate and producing cause of the Plaintiff's injuries.

### III.

These acts of omission on the part of the STATE OF TEXAS, by and through its governmental unit, THE TEXAS STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, constitute actionable negligence, and the STATE OF TEXAS is therefore liable pursuant to the terms of the Texas Tort Claims Act.

While extensive special exceptions were filed by the state, the record does not reflect that the court ruled upon them.

In his charge to the jury, the court gave only the usual, boiler-plate instructions and admonitions, among which he defined negligence, ordinary care and proximate cause in the customary, general negligence case. Question No. 1 asked:

Did the negligence if any, of those named below proximately cause the injury in question?

Answer "yes" or "no" for each of the following,

a. State Department Highways and Public Transportation. Yes.

b. Scott Hamilton Henson. No.

Question No. 2, inquired of comparative negligence and was not answered. Question No. 3 inquired of damages. *There were absolutely no questions or instructions required by the Tort Claims Act.*

The state objected to the first question and requested, in writing, the issue be submitted as follows:

### QUESTION NO. 1

Did the negligence, if any, of those named below proximately cause the occurrence in question?

With respect to the roadway condition of the premises, the State Department of Highways and Public Transportation was negligent if:

a. The roadway condition posed an unreasonable risk of harm; and,

b. The State Department of Highways and Public Transportation had actual knowledge of the danger; and,

c. Scott Hamilton Henson did not have actual knowledge of the danger; and,

d. The State Department of Highways and Public Transportation failed to adequately warn Scott Hamilton Henson of the condition of the roadway and make that condition reasonably safe.

**Answer "Yes" or "No" for each of the following:**

SCOTT HAMILTON HENSON

THE STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION

The trial court refused the request. Thus, this case was pled, tried, submitted to the jury and is affirmed by the majority opinion in total disregard to the requirements of the Tort Claims Act.

The most basic proposition, of course, is that unless the alleged acts of negligence bring the action within the waiver of immunity provisions of the Tort Claims Act, the action is not maintainable against the state. Since this alleged cause of action arose in 1981, prior to the recodification of the Act, all references will be to Article 6252-19, and the sections thereof, rather than the recodified version of the Act in chapter 101, Texas Civil Practice and Remedies Code.

Section 3 of the Act, which courts and commentators alike have criticized and imp-

lored the legislature to clarify, provides, as pertaining to this case:

> Each unit of government in this state shall be liable for money damages for ... personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. *Such liability is subject to the exceptions contained herein....* (emphasis added).

Section 4 waives immunity "to the extent such liability [is] created by Section 3."

The first problem with the majority opinion is that it fails to address and give effect to the provision of Section 3 that *"liability is subject to the exceptions contained herein."*

Appellee's allegations of the negligent acts relied upon in his First Amended Petition could not, under any circumstances, state a cause of action as provided under *Texas Department of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex.1974). We know from the evidence at trial that appellee's theory was that the state had negligently attached, with nails rather than bolts, the chevron warning sign to a post which was in turn attached to a barrel, thereby causing the warning sign, upon impact, to dislodge from its post and crash through appellee's windshield, injuring him. Thus, there is no question that appellee's theory was a defective highway warning sign.

Section 14 of the Act provides:

The provisions of this Act shall *not* apply to:

> \*    \*    \*    \*    \*    \*

> (12) Any claim arising from the absence, *condition,* or malfunction of any traffic or road sign, signal, or warning device unless such absence, *condition,* or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice ... (emphasis added).

This provision exempts the state from the liability appellee sought to impose, the lia-

bility the trial court imposed, and the liability the majority opinion sanctions.

In their article on governmental immunity, then Supreme Court Justice Joe R. Greenhill and Thomas V. Murto III, traced the legislative history of the Texas Tort Claims Act, in the following language:

> One of the first major Texas tort claims bills was introduced by Representative DeWitt Hale in the 1953 legislature. Despite some popular support for the proposal, the Texas Municipal League and others concerned about the economic repercussions on local governments were instrumental in preventing legislative action. In 1967, Representative Hale gained additional support, and his bill passed the House. It died, however, in the Senate Committee on Jurisprudence in a tie vote. Both houses of the legislature then created interim study committees.

> The bill was again introduced in 1969 under the sponsorship of Senator Oscar Mauzy and Representative Temple Dickson. After hearings by committees in both houses, the legislature appeared to be in favor of restricting immunity and passed the bill. On May 1, the Governor vetoed the bill. In his veto message, he recognized that "the time has arrived when the doctrine of absolute governmental immunity must be reconsidered. This bill, however, is so broad and all-encompassing in scope as to impose upon the taxpayers of the State of Texas an onerous burden."

> After the veto, the bill was quickly amended to conform to the Governor's objections. Attractive nuisance claims were eliminated, and the bill provided that nonpaying claimants injured by premise defects would be considered licensees. Individual immunity of government employees was preserved in its pre-Act form, *and liability for defective traffic control hazards was restricted to situations that are not corrected within a reasonable time after notice.* The traffic control restriction does not apply to the duty to warn of special defects such as roadway obstructions or excavations. The modified bill was passed and

signed by the Governor on May 22, 1969. It became effective on January 1, 1970. The Act's final form is the result of concessions to various groups, who received special treatment from the bill's proponents in return for not opposing it. The river authorities were able to exempt floodgates from the motor-driven equipment coverage, and the Texas Hospital Association managed an exclusion for medical equipment. Perhaps the most significant concession was that achieved by the school districts, whose liability was limited to motor vehicles. Since the use of school premises by children is, of course, extensive, this provision creates a large exception to the Act's general elimination of governmental immunity for premise defects.

Greenhill & Murto, *Governmental Immunity,* Tex.L.Rev. 462, 467–68 (1971) (emphasis added) (footnotes omitted). Thus, there can be no question that the Section 14 exemption of claims arising from the "condition of any traffic or road sign, signal, or warning device unless such ... condition ... shall not be corrected by the governmental unit responsible within a reasonable time after notice ..." was intentionally placed in the Act and it means exactly what it says. That was the foundation for this court's conclusion in *Creek v. Texas State Department of Highways and Public Transportation,* 826 S.W.2d 797 (Tex. App.—Houston [14th Dist.] 1992, writ denied), and the conclusion of the court in *Lawson v. Estate of McDonald,* 524 S.W.2d 351, 356 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) that "condition" referred to in the statute was not intended to refer to the state's original installation or its maintenance of a sign or signal. Rather, both courts held, that the term refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control and, even then, the unit of government is not liable unless it fails to correct the condition "within a reasonable time after notice."

While the majority opinion does not actually address this issue, it appears they attempt to write around it by concluding that "appellee's injuries *arose from some con-*dition or use of property*" as used in section 3 of the Act. Again, I disagree.

In *Hein v. Harris County,* 557 S.W.2d 366, 369 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref. n.r.e.), Chief Justice Coleman, speaking for the court stated:

We do not think that the Legislature intended that there be a waiver of governmental immunity in all cases where some item of personal property is either used or not used. *The injury must be proximately caused either by the negligence of an employee acting within the scope of his employment in that employee's use of tangible property, or under circumstances where an employee or agent furnished tangible property the use of which caused the personal injury.* (emphasis added).

*See also LeLeaux v. Hamshire–Fannett School Dist.,* 835 S.W.2d 49, 51 (Tex.1992) (the phrase "arises from," requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor-driven vehicle or piece of equipment); and *Beggs v. Texas Department of Mental Health and Mental Retardation,* 496 S.W.2d 252, 254 (Tex.Civ. App.—San Antonio, 1973, writ ref'd) (since the Act does not define "use," the common and ordinary definition meaning "to put or bring into action or service; to employ for or apply to a given purpose" would be applied.)

The allegedly defective barrel-signs simply do not fit within liability for "some condition or some use of tangible property" as specified in Section 3 of the Act. Rather, if the plaintiff had a cause of action, it was as a premise defect case, which brings me to the last reason for this dissent.

The majority further errs in holding that "[a]ppellant by creating the condition of the barrel-signs is deemed to have actual notice of the defect." First, Section 14(12) requires notice be given to the state of the defective condition of road signs. Second, in *Keetch v. The Kroger Company,* 845 S.W.2d 262, 265, (Tex.1992) the supreme court held as "incorrect" the argument that if the owner of the premises "created the

condition ... [it] is charged with knowledge of the condition as a matter of law." Here, the state denied that the barrel-signs were defective; therefore "the inference of knowledge could not be made as a matter of law." *Keetch*, at 265.

Appellee tried the case as a general negligence case and the state defended upon the basis, that if anything, it was a premise defect case. As stated above, the state objected to submission of the case on principles of general negligence and requested that the jury be instructed that the state was negligent if (1) the roadway condition posed an unreasonable risk of harm, and (2) the State Department of Highways and Public Transportation had actual knowledge of the danger, and (3) Scott Hamilton Henson did not have actual knowledge of the danger, and (4) the State Department of Highways and Public Transportation failed to adequately warn Scott Hamilton Henson of the condition of the roadway and make that condition reasonably safe. The trial court overruled the requested instructions and gave the jury a charge, discussed above, that only asked two liability questions and gave no instructions under the Act.

In *State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235, 237, (Tex.1992), the supreme court stated that in order to recover for an ordinary premise defect (not a special defect), the claimant must prove: (1) a condition of the premises created an unreasonable risk of harm; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; and (5) the owner's failure was a proximate cause of injury. The trial court in *Payne* asked the jury the two identical liability questions asked here by the trial court. While the trial court in *Payne* gave some additional instructions concerning governmental liability, duty owed and dangerous condition (none of which were given here by the trial court), the charge there did not "request

the jury to find whether Payne knew of the location of the culvert at the time of the accident," and the state, in writing, requested the trial court to so inquire of the jury. *Payne*, 838 S.W.2d at 238.

The supreme court held that the refusal of the trial court to make the requested inquiry constituted a clear refusal to submit a premise defect theory to the jury. The court said:

> Payne was not entitled to recover on his special defect theory as a matter of law. To prevail on his premise defect theory, Payne was required to obtain a finding that he lacked knowledge of the culvert. This element of his claim was not included in the broad-form charge which the trial court submitted to the jury. A finding on this one element cannot be deemed in Payne's favor because the State objected to the omission by requesting a jury question on that issue. TEX.R.CIV.P. 279; *Morris* [*v. Holt*], 714 S.W.2d 311, 312–13 (Tex.1986). Thus, the verdict does not support a judgment in Payne's favor.
>
> Accordingly, the judgment of the court of appeals is reversed, and judgment is rendered that Payne take nothing.

*Id.* 838 S.W.2d at 241 at 1201–02 (footnote omitted). At least so far as the absence of a finding that Henson lacked knowledge of the defective sign, the identical question is presented by this record.[2] He is precluded from recovering on a premise defect theory. Since the state objected to the omission by requesting a jury question on that issue, a finding on this one element cannot be deemed in Henson's favor.

Accordingly, the judgment should be reversed and rendered that Henson take nothing. Because the majority holds otherwise, I dissent.

---

**2.** Of course the error is further compounded here because there is no finding that the state

actually knew of the condition. A discussion of that issue is, however, unnecessary.