MEMORANDUM OPINION



No. 04-06-00675-CV


WILSON COUNTY, Texas,

Appellants


v.



Tim and Jill THOMAS as Friends of G.T., a Minor,


Appellees



From the 218th Judicial District Court, Wilson County, Texas


Trial Court No. 06-03-0088-CVW


Honorable Fred Shannon, Judge Presiding



Opinion by: Rebecca Simmons, Justice


Sitting: Karen Angelini, Justice

 Sandee Bryan Marion, Justice

 Rebecca Simmons, Justice


Delivered and Filed: August 8, 2007


AFFIRMED IN PART; REVERSED AND RENDERED IN PART


 This interlocutory appeal stems from the denial of a plea to the jurisdiction made by Wilson
County. We affirm in part, and reverse and render in part.

Factual Background

 Wilson County ("Wilson") and several area school districts entered into an Interlocal
Cooperation Agreement creating a Juvenile Justice Alternative Education Program (JJAEP) with a
boot camp component referred to as the Enrichment, Literacy, Insight, [sic] for Tomorrow's
Encouragement (ELITE). The stated purpose of the JJAEP is to benefit juveniles who have
committed an offense or have been expelled from school with a structured environment, education,
recreation, mentoring, counseling and family preservation.

 G.T., a minor, was participating in a ninety-day program at the ELITE boot camp. All
participants in the program, which subjects participants to rigorous physical activity, were required
to submit to a physical exam before participating in the physical exercises. Upon his admission to
the program, G.T.'s physical exam was incomplete and the ELITE officials failed to obtain a signed
consent form from G.T.'s parents allowing him to take part in the exercises. When G.T. arrived on
Friday, the program provided G.T. with a particular colored t-shirt indicating he was eligible to
participate in the exercises despite the lack of parental consent. (1) After participating in rigorous
physical exercise, G.T. went home on Friday evening. When his parents took him to the doctor on
Monday, the doctor found G.T. suffered from severe heat injury requiring hospitalization. The
Thomases allege that by failing to provide G.T. with the proper colored t-shirt, G.T. was forced to
exercise, leading to his injuries, and that the program's delayed medical response to G.T.'s injury
caused him harm.

 The Thomases brought suit against Wilson, among others. Wilson filed a plea to the
jurisdiction that sought dismissal based on lack of subject matter jurisdiction due to sovereign or
governmental immunity. The trial court denied Wilson's plea to the jurisdiction in its entirety,
leaving claims of misuse of property under the Texas Tort Claims Act, and negligence and gross
negligence claims for the denial of medical care under 42 U.S.C. § 1983, and a breach of contract
claim. Wilson subsequently filed this interlocutory, accelerated appeal. Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(8) (Vernon 2005).

Governmental Immunity

 Sovereign immunity from suit defeats a trial court's subject matter jurisdiction over a cause
of action. See Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 639 (Tex. 1999). Governmental
immunity, unless waived, affords similar protection to subdivisions of the State, including counties,
cities, and school districts. Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex.
2003). A governmental entity asserting immunity may submit a plea to the jurisdiction. Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 

 A plea to the jurisdiction is based solely on jurisdictional claims, and does not reach the
merits of the case. County of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). It is the
plaintiff's burden to demonstrate the court's jurisdiction by alleging a valid waiver of immunity by
the governmental entity. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003). 
If, after having an appropriate opportunity to amend, the plaintiff fails to demonstrate an actionable
claim, the court must grant a plea to the jurisdiction. Harris County v. Sykes, 136 S.W.3d 635, 639
(Tex. 2004).

 Whether a court has subject matter jurisdiction is a question of law that we review de novo. 
Tex. Dep't of Parks and Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). In considering
jurisdictional pleas, an appellate court reviews the pleadings and any evidence relevant to the
jurisdiction issue. Tex. Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002). We construe
the pleadings liberally in the plaintiff's favor. Id. We take as true all evidence favorable to the
nonmovant and indulge every reasonable inference and resolve doubts in the nonmovant's favor. 
Miranda, 133 S.W.3d at 228. Texas Tort Claims Act

 We return to the appellees' claim that Wilson waived its governmental immunity because
G.T.'s claims fall within the parameters of the Texas Tort Claims Act (TTCA). The TTCA provides
a limited waiver of governmental immunity when a personal injury is proximately caused by a
"condition or use of tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant under Texas law." Tex. Civ. Prac. & Rem. Code Ann. §§
101.021, 101.025 (Vernon 2005). Wilson asserts the defense of sovereign and governmental
immunity, arguing G.T.'s injury was not caused by a use or misuse of property. To determine
whether a governmental unit waived sovereign immunity, we look to the pleadings and may consider
evidence, when necessary, to resolve the jurisdictional issues raised. Tex. Dep't of Criminal Justice
v. Miller, 51 S.W.3d 583, 587 (Tex. 2001) (citing Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
555 (Tex. 2000)).

 According to the Thomases' pleadings, Wilson waived its sovereign immunity by furnishing
the incorrect color uniform and then not replacing it, which subjected G.T. "to excess physical
activity and labor which was the direct causal link to his injuries and damages." Because no party
contests the t-shirt is property, we examine whether Wilson waived immunity by a condition or use
of tangible property which proximately led to G.T.'s injuries.

 A. "Use"

 The Texas Supreme Court has defined "use" to mean "to put or bring into action or service;
to employ for or apply to a given purpose." San Antonio State Hosp. v. Cowan, 128 S.W.3d 244,
246 (Tex. 2004). The Court distinguishes between injuries based on the failure or non-use of
property and the misuse of property. Miller, 51 S.W.3d at 587-88. In Lowe v. Texas Tech
University, 540 S.W.2d 297, 300 (Tex. 1976), the Court held furnishing a football uniform, without
a proper protective device for a player's knee, constituted a use of personal property. Similarly, in
Robinson v. Central Texas MHMR Center, 780 S.W.2d 169, 171 (Tex. 1989), the failure to provide
a life preserver to a patient the Center took swimming constituted use. Importantly, "use" is not
established when the governmental unit merely allowed someone to use the property, made the
property available to someone, or simply provided property that created a "condition" and nothing
more. Cowan, 128 S.W.3d at 246. The mere act of providing a t-shirt that is not inherently unsafe
does not constitute a use or condition under the TTCA. Cowan, 128 S.W.3d at 245.

 In this case, the parties agree the ELITE program gave G.T. the wrong colored shirt. The
failure to replace the t-shirt with a different colored t-shirt does not constitute use. See Miller, 51
S.W.3d at 587-88 (holding a claim based on non-use of property does not allege "use" within the
TTCA). See also Kerrville State Hosp. v. Clark, 923 S.W.2d 582, 584 (Tex. 1996) (concluding that
a failure to prescribe medications which allegedly could have prevented the injury is a non-use and
not within the waiver). In Kerrville State Hospital, the Supreme Court limited the "precedential
value" of Lowe and Robinson to "claims in which a plaintiff alleges that a state actor has provided
property that lacks an integral safety component and that the lack of this integral component led to
the plaintiff's injuries." Id. at 585. The Thomases do not assert that the t-shirt in question lacked
an integral safety feature leading to G.T.'s injury. 

 Furthermore, Cowan notes that the TTCA's waiver of immunity under use of personal
property only applies when the governmental unit is itself the user. Cowan, 128 S.W.3d at 245-46. 
In Cowan, the court held no waiver existed when the hospital provided a suicidal patient suspenders
and a walker with which he hung himself, as the walker and suspenders were not inherently
dangerous. "[T]he Hospital's immunity can be waived only for its own use of Cowan's walker and
suspenders, and not by Cowan's use of them." Id. at 246. In this case, the ELITE program was the
provider of the property, not the user of the property.

 B. "Condition"

 Waiver under the TTCA also exists when the governmental unit creates a condition of
property that injures a plaintiff. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.025 (Vernon
2005). The Thomases liken the improperly colored t-shirt to the defective signage in Texas
Department of Transportation v. Henson, 843 S.W.2d 648 (Tex. App.--Houston [14th Dist.] 1992,
writ denied). We disagree. In Henson, a sign affixed to a traffic barrel became detached and struck
a motorist, injuring him. Id. at 649. The Henson court held the sign was tangible property, and that
the traffic barrels were not maintained in a condition sufficient to perform properly their designated
function, i.e., traffic control. Id. at 652. Additionally, the State had notice of the defect and failed
to warn the motorist or make the condition reasonably safe. Id. 

 We find the Henson analogy inapposite. First, the Thomases' complaint is essentially based
on the ELITE program's failure to provide the correct information to the drill instructors. The Texas
Supreme Court has rejected misinformation or misuse of information as a "use" under the TTCA. 
Univ. of Tex. Med. Branch at Galveston v. York, 871 S.W.2d 175, 179 (Tex. 1994). Second, G.T.'s
injuries were not proximately caused by the color of the t-shirt or the condition it may have created. 
Instead, the claims are based on the drill instructors' alleged intentional harming of G.T. despite his
ineligibility to exercise. Intentional torts do not fall within the purview of the TTCA. Tex. Civ.
Prac. & Rem. Code § 101.057(2) (Vernon 2005).

 Here, the ELITE program provided G.T. with a particular t-shirt indicating his eligibility to
exercise. At most, the ELITE program's acts may have created the appearance that G.T. was eligible
to participate in the exercises, which in turn, led to his injury. The t-shirt itself, or lack thereof, is
not the cause of the injury. See Dallas County Mental Health & Mental Retardation v. Bossley, 968
S.W.2d 339, 343 (Tex. 1998) ("Property does not cause injury if it does no more than furnish the
condition that makes the injury possible").

 Based on our review of the pleadings and evidence before the trial court, the Thomases failed
to demonstrate a clear waiver of sovereign immunity by Wilson for acts falling under the TTCA. 
The trial court erred in failing to dismiss the state law negligence claims against Wilson. We reverse
that portion of the trial court's judgment, and render that portion of the trial court's judgment.


Breach of Contract

 The Thomases asserted a breach of contract claim against Wilson for the failure to disclose
the program's risks and dangers and failure to provide a safe environment for G.T. Immunity from
suit bars breach of contract claims against governmental entities unless immunity is clearly waived
by the legislature. Tooke v. City of Mexia, 197 S.W.3d 325, 332-33 (Tex. 2006). The Local
Government Code permits a limited waiver of immunity from suit when a county "is a party to a
written contract for engineering, architectural, or construction services or for goods related to
engineering, architectural, or construction services." Local Govt. Code § 262.007(a) (Vernon
2005). The Thomases only allege they agreed to pay enrollment fees to the program in exchange for
a safe and productive program. This allegation does not state a breach of contract claim falling
within the limited waiver. Accordingly, Wilson did not waive its immunity by contracting with the
Thomases. The trial court erred in denying Wilson's plea to the jurisdiction on the breach of contract
claim. We reverse and render that portion of the trial court's judgment.42 U.S.C. § 1983

 We next address the federal civil rights claims that remain pending against Wilson. Wilson
sought dismissal based on governmental immunity and the Thomases' failure to state a sufficient
federal claim to invoke the trial court's jurisdiction. (2)

 Liability under 42 U.S.C. § 1983 ("section 1983") requires proof that: (1) the defendant's
conduct was committed under color of state law; and (2) the conduct deprived the plaintiff of a
federal right, privilege or immunity. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other
grounds by Daniels v. Williams, 474 U.S. 327 (1986). See also County of El Paso v. Dorado, 180
S.W.3d 854, 862 (Tex. App.--El Paso 2005, pet. denied). Under federal law, counties are not
immune from section 1983 claims. See Howlett v. Rose, 496 U.S. 356, 375-76 (1990) (citing Owen
v. City of Independence, 445 U.S. 622, 647 n.30 (1980)) ("Municipal defenses-including an assertion
of sovereign immunity-to a federal right of action are, of course, controlled by federal law"); 
Campos v. Nueces County, 162 S.W.3d 778, 785 (Tex. App.--Corpus Christi 2005, pet. denied).
Counties and other local governmental entities are "persons" for purposes of section 1983 claims and
may be liable for damages under 42 U.S.C. § 1983. Monell v. Dep't of Social Svcs., 436 U.S. 658,
690 (1978); Hoff v. Nueces County, 153 S.W.3d 45, 49-50 (Tex. 2004) (per curiam).Failure To State A Claim

 Although Wilson acknowledges that a county government does not have immunity under
section 1983, it argues the section 1983 claim must be dismissed for failing to state a proper claim. 
Since the burden was on the Thomases to establish subject matter jurisdiction, Wilson argues the
Thomases were required to plead facts sufficient to support a claim under section 1983; otherwise,
the Thomases' claims are tort claims barred by governmental immunity.


 A. Procedure

 Wilson's plea to the jurisdiction was unsupported by any affidavits or other evidence relevant
to the section 1983 claim. (3) We have no reporter's record from the hearing on the plea to the
jurisdiction.

 Wilson's argument for dismissal is focused entirely on the Thomases' allegations contained
in the First Amended Petition. "When a plea to the jurisdiction challenges the pleadings, we
determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to
hear the cause." Miranda, 133 S.W.3d at 226. In determining whether jurisdiction exists, "[w]e
construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. If the
pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but
do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading
sufficiency and the plaintiffs should be afforded the opportunity to amend." Id. at 226-27. 
Furthermore, "[i]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." Id. We are
also mindful that "[w]hether a determination of subject-matter jurisdiction can be made in a
preliminary hearing or should await a fuller development of the merits of the case must be left
largely to the trial court's sound exercise of discretion." Bland, 34 S.W.3d 547, 554 (Tex. 2000). (4) 


 B. Allegations Against Wilson

 To sustain an action under section 1983, the Thomases had to allege two elements: (1)
Wilson deprived G.T. of a right secured by the Constitution; and (2) Wilson was acting under color
of state law, custom or usage. Parratt, 451 U.S. at 535. Wilson contends the Thomases failed to
properly allege either element. The Thomases alleged that G.T. was subjected to physical and mental
abuse while attending a juvenile boot camp. Specifically, they allege that Wilson inflicted cruel,
unusual and excessive punishment on G.T., in violation of the Fourth, Fourteenth and/or Eighth
Amendments, because Wilson's drill instructors used excessive force and were deliberately
indifferent in failing to provide needed medical care and in failing to summon prompt medical care
for G.T. These allegations mirror the allegations described in the case of Austin v. Johnson, 328 F.3d
204, 206-07 (5th Cir. 2003). In its plea to the jurisdiction, Wilson relied entirely on the Austin case
as a basis for dismissal. Wilson contends the Thomases failed to plead a constitutional deprivation
because the boot camp G.T. attended was an educational institution and corporal punishment does
not implicate any constitutional right.

 1. Violation of a Constitutional Right

 Both parties rely on the Austin case for support. The Austin case involved a youth named
John who was caught stealing a candy bar at school and was sentenced by a justice of the peace to
attend a one day boot camp as punishment. While at the boot camp, he suffered severe dehydration
and heat stroke, resulting in unconsciousness. John remained unconscious for over an hour before
personnel called an ambulance. In reviewing the plaintiffs' claims the court noted that "[s]tate
defendants do not incur Eighth Amendment liability unless 'the individual was being held in custody
after criminal conviction.'" Id. at 208. The Fifth Circuit further reflected that the Eighth
Amendment is inapplicable to corporal punishment in schools, observing that schoolchildren have
little need for the amendment's protection because schools are open institutions where children may
leave without physical restraint. Id. (citing Ingraham v. Wright, 430 U.S. 651, 669-70 (1977)). The
Fifth Circuit held that although a one day youth offender camp can hardly be equated to
incarceration, this camp was of a sufficient custodial nature to implicate the Eighth Amendment.

 There is no pleading or evidence indicating whether G.T. was adjudicated or on probation
when he was referred to the boot camp. Nor is there clear evidence or pleadings relating to the
nature of the program in which he was enrolled. Although the pleadings may be deficient, we cannot
conclude that the pleadings affirmatively negate the Thomases' section 1983 claim. County of
Cameron, 80 S.W.3d at 559.

 2. Acting Under Color of State Law

 The second element of a section 1983 violation requires action under color of state law,
custom or usage. In this regard, liability under section 1983 arises if a deprivation of constitutional
rights was inflicted pursuant to acts which the county has officially sanctioned or ordered. Pembaur
v. City of Cincinnati, 475 U.S. 469, 479-80 (1986). This determination requires an analysis of: (1)
a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose moving force
was the policy or custom. Monell, 436 U.S. at 694. These elements distinguish individual violations
by employees from those of the governmental entity. Piotrowski v. City of Houston, 237 F.3d 567,
578 (5th Cir. 2001).

 The Thomases allege Wilson was acting under color of state law at all times but do not allege
a specific policy maker in their pleadings. The pleadings also lack any reference to an official policy. 
Nonetheless, an official policy can be established through misconduct so pervasive among non-policy making employees of the county as to constitute a custom or usage with the force of law. 
Monell, 436 U.S. at 691. The Thomases allege that Wilson authorized, tolerated as a practice, and
ratified the misconduct of the drill instructors and failed to require and/or properly train the drill
instructors in the use of physical force and to provide and summon necessary medical aid for
participants in need. The Thomases conclude that this misconduct constituted a policy, practice, or
custom which was the proximate cause of G.T.'s injuries. Although the Thomases' pleadings lack
clarity, we cannot conclude that they affirmatively negate their section 1983 claims.

Conclusion

 The Thomases failed to demonstrate a clear and unambiguous waiver of immunity regarding
the state tort claims and breach of contract claims, and the trial court should have dismissed those
claims. We reverse and render said portion of the trial court's judgment. With respect to the section
1983 claims, we reverse and render that portion of the judgment retaining the section 1983
negligence claim. We affirm the portion of the judgment retaining jurisdiction over the remaining
section 1983 claims.

 Rebecca Simmons, Justice
1. There is no dispute that G.T. should have received a different colored t-shirt indicating he was not
qualified to participate in physical activities.
2. During oral argument, both parties agreed that a negligent act cannot form the basis of a section 1983
claim.
3. The only attachment to the plea to the jurisdiction was a certified copy of an Interlocal Cooperation
Agreement regarding the JJAEP.
4. We have no opinion on the merits of the Thomases' claims.