Mary Katherine LAWSON et vir, Appellants,

v.

ESTATE of William T. McDONALD, Deceased, et al., Appellees.

No. 5351.

Court of Civil Appeals of Texas, Waco.

May 22, 1975.

Rehearing Denied June 19, 1975.

Wiley, Plunkett, Gibson & Allen, Lewin Plunkett, San Antonio, for appellants.

Huson, Clark, Thornton & Summers, Robert B. Summers, San Antonio, for appellee Estate of William T. McDonald.

Les King, Asst. Atty. Gen., Austin, for appellee State of Texas.

HALL, Justice.

On July 16, 1971, a 1970 Ford pickup truck driven by Mrs. Mary Katherine Lawson and a 1968 Toyota passenger car driven by William T. McDonald collided in the intersection of Farm Road 1604 and Farm Road 1535, in Bexar County. Mr. McDonald was killed in the collision. Mrs. Lawson suffered serious bodily injuries. She and Mr. Lawson brought this suit to recover their damages from the Estate of William T. McDonald. The State of Texas was subsequently impleaded as a defendant. The pleadings of the parties raise these theories as to the causes of the collision: (1) Negligent acts committed by McDonald; (2) negligent acts committed by Mrs. Lawson; (3) the removal of a stop sign at the intersection by unknown persons prior to the collision; and (4) the State's negligent maintenance of the sign, permitting its easy removal by vandals.

Trial was to a jury. At the close of the proof, the court granted the State's motion for an instructed verdict. Answering special issues numbered as follows on the remaining questions in the case, the jury (1) found that neither Mrs. Lawson nor Mr. McDonald failed to yield the right-of-way; (4) failed to find that Mr. McDonald was driving at a negligent speed; (6), (7) found that Mr. McDonald failed to keep a proper lookout, and that this failure was a proximate cause of the collision; (8), (9) found that Mr. McDonald failed to make prudent application of his brakes, and that this failure was a proximate cause of the collision; (10) failed to find that Mrs. Lawson was driving at a negligent speed; (12), (13) found that Mrs. Lawson failed to keep a proper lookout, and that this failure was a proximate cause of the collision; (14), (15) found that Mrs. Lawson failed to make prudent application of her brakes, and that this failure was a proximate cause of the collision; and found that the plaintiffs suffered damages totaling $69,925.00. A take-nothing judgment against the plaintiffs was rendered upon the verdict and upon the court's ruling on the State's motion for instructed verdict. We affirm.

The plaintiffs assert that there is no evidence to support the negligence and proximate cause findings against them relating to lookout and brakes, or, alternatively, that these findings are against the great weight and preponderance of the evidence; and that, as a matter of law, neither act of negligence found against Mrs. Lawson could have been a proximate cause of the collision.

The proper testing of a "no evidence" complaint requires the reviewing court to view and consider the evidence in the case, and every reasonable deduction that may be based thereon, in a light most favorable to the questioned finding. Douglass v. Panama, Inc. (Tex.Sup., 1974), 504 S.W.2d 776, 777.

Mrs. Lawson was the sole survivor of the collision. She testified that she has no memory of the accident. There is no other known eyewitness. For this reason, both parties relied heavily upon the testimony of accident-reconstruction experts.

The collision occurred at approximately 8:00 A.M. The weather was clear and the

pavement was dry. Immediately prior to the collision, Mrs. Lawson was traveling south on Farm Road 1535. The speed limit for southbound traffic approaching the intersection was 70 miles per hour. North of the intersection there was one lane for southbound traffic and one lane for northbound traffic on FR 1535. South of the intersection, FR 1535 provided two lanes for southbound traffic and two lanes for northbound traffic. Just south of the intersection, the speed limit for southbound traffic reduced to 55 miles per hour.

Mr. McDonald was traveling west on Farm Road 1604 when the collision occurred. The speed limit for westbound traffic approaching the intersection was 40 miles per hour. On each side of the intersection, FR 1604 provided one lane for westbound traffic and one lane for eastbound traffic. Islands beginning near the east and west edges of the intersection, and extending 150 feet therefrom, divided the traffic lanes in FR 1604 as they approached the intersection. Triangular-shaped islands at the edge of the intersection created right-turn lanes for drivers approaching the intersection on FR 1604 from either direction who desired to turn right onto FR 1535.

On the day in question, Mrs. Lawson faced a highway sign located 800 feet from the intersection which read "JCT 1604"; and a sign reading "speed zone ahead," 150 feet from the intersection. Mr. McDonald faced the following road signs as he approached the intersection: "speed limit 40," located 1,250 feet from the intersection; "highway intersection 1000 feet," located 1,000 feet from the intersection; "stop ahead," 700 feet from the intersection; and "JCT 1535," 500 feet from the intersection. Ordinarily, a stop sign located on the triangular right-turn island on the east side of the intersection would have faced Mr. McDonald, commanding him to stop before entering; however, this stop sign was removed by vandals sometime after 3:00 P.M.

the day before the day in question, and it was not in place at the time of the collision.

Mrs. Lawson had traveled the intersection every workday for 2½ years prior to the day in question. She was on her way to work when the accident happened. She testified that she was familiar with all the signs controlling traffic approaching the intersection on either highway; that she relied upon the fact that a stop sign faced traffic on FR 1604; that she never expected anyone to enter the intersection on FR 1604 without first stopping; that she intended to go straight through the intersection; that she knew the speed limit just south of the intersection was 55 miles per hour; and that her speed at the time of the collision "would have been around 55 miles per hour."

Mr. McDonald was not familiar with the intersection.

The point of impact was in the northwest quadrant of the intersection. It was located 31 feet from the east line of the intersection and 10 feet from the north line. Both vehicles were traveling straight-ahead at the time of collision. The left half of the front of the pickup struck the right side of the Toyota at its right front wheel. Neither driver attempted to brake or turn prior to impact.

John Bentley, an accident-reconstruction expert, testified that at the time of impact the pickup was traveling 55 miles per hour and the Toyota was traveling 37 miles per hour; that the drivers had full view of each other when the pickup was 300 feet from the point of collision and the Toyota was 202 feet from that point; that they had "clear, unobstructed views" from there to impact; that these distances of initial view placed each vehicle 3.7 seconds from the time of collision; that simple reaction time required to avoid a potential collision, which includes perception time and is the "total time it takes to see, think and commence doing," is ordinarily three-fourths of a second; that if Mrs. Lawson or Mr. Mc-

Donald had begun reaction time as close as two seconds to the time of collision, it could have been avoided; but that this point in time and distance—that is, two seconds in time, which would place the pickup 160 feet from the point of impact and the Toyota 107.9 feet from the point of impact—"was the last point in which the reaction period could commence" in order to avert the collision.

In summary, the evidence reasonably shows that neither driver saw the other before impact; that although two seconds before the accident was the last point in time that either driver could begin perceiving the danger of the threatened collision in time to take evasive action to avoid it, at that point in time each driver had been in full view of the other for at least 1.7 seconds; that during this time, Mrs. Lawson traveled 140 feet in her pickup to within 150 feet of the intersection; that during this same period of time Mr. McDonald traveled 130 feet in the Toyota to within 70 feet of the intersection; that the Toyota was not braked nor turned during this time, but continued straight toward the intersection; and that Mr. McDonald was totally unaware of the pickup.

■ We believe that the evidence we have recited is sufficient to support determinations by the jury that Mrs. Lawson wholly failed to keep a lookout for other traffic as she approached the intersection; and that if she had been keeping a proper lookout it should have been apparent to her at a point in time when she could have avoided the accident by the application of her brakes or by other proper evasive action—at which point in time the Toyota was only 70 feet from the intersection and was traveling 54 feet per second—that the Toyota probably would not stop at the intersection. Accordingly, we hold that the evidence is legally sufficient to support the questioned findings. Moreover, a review of the entire record convinces us that these

findings are not against the great weight and preponderance of the evidence.

The plaintiffs' argument that neither Mrs. Lawson's failure to keep a lookout nor her failure to apply brakes could have been a proximate cause of the accident as a matter of law, turns on their contention that she had the right-of-way. They cite a number of cases for the general rule that the failure of a plaintiff who has the right-of-way to keep a lookout or take evasive action cannot legally be counted a proximate cause of a collision if there is no evidence of circumstances which would have reasonably alerted a prudent driver situated as was the plaintiff, in time for proper evasive action by him, that the defendant probably was not going to yield the right-of-way. Samford v. Duff (Tex.Civ. App.—Corpus Christi, 1972, writ ref., n. r. e.), 483 S.W.2d 517, is representative of the cases cited. The applicable rules are set forth in that case (at 483 S.W.2d 522) as follows:

"It is well settled that although a person is not required to anticipate negligent or unlawful conduct on the part of another, he is not entitled to close his eyes to that which is plainly visible to a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955). Nevertheless, the mere fact that an automobile driver is favored at an intersection with the right of way resulting from the fact that a green light is facing him does not relieve him from all duty and responsibility and does not exonerate him from blame if there is a vehicle already in the intersection, or if there is approaching him on the intersecting street another vehicle, in view, the driver of which, either because of high speed, failure to slow down, or obvious inattention, is manifestly unable to stop. If those conditions prevail, so long as the driver who is favored by the right of way still has it

within his power to stop or otherwise take evasive action, he must do so. He cannot rush out into the path of danger merely because the right of way is with him. Skyline Cab Co. v. Bradley, 325 S.W.2d 176 (Tex.Civ.App.—Houston 1959, writ ref'd n. r. e.); Checker Cab Co. v. Wagner, 199 S.W.2d 791 (Tex.Civ.App.—El Paso 1946, n. w. h.).

"The burden is on the defendant, if he will escape liability for his own negligent conduct or acts, to both plead and prove the defense of contributory negligence. MacDonald v. Skinner, 347 S.W.2d 950 (Tex.Civ.App.—El Paso 1961, writ dism'd); Jaynes v. Lee, 306 S.W.2d 182 (Tex.Civ.App.—Texarkana 1957, n. w. h.). There is no presumption that a person is guilty of contributory negligence simply because an accident occurred. Socony-Vacuum Oil Co. v. Lambert, 180 S.W.2d 456 (Tex.Civ.App.—Amarillo 1944, n. w. h.); Polasek v. Quinius, 438 S.W.2d 828, 838 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.). 'It is held that contributory negligence is not established by evidence which is equally consistent with the exercise of care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof.' Jordan v. City of Lubbock, 88 S.W.2d 560 (Tex.Civ.App.—Amarillo 1935, writ dism'd); Dewhurst v. South Texas Rendering Co., 232 S.W.2d 135 (Tex.Civ. App.—San Antonio 1950, writ ref'd n. r. e.)."

In Samford v. Duff, the plaintiff and defendant collided in a street intersection in the City of Corpus Christi. The plaintiff was on the defendant's right as they approached the intersection. The jury found that the plaintiff proximately caused the collision by failing to keep a proper lookout. Judgment was rendered on these findings for the defendant. The Court of Civil Appeals sustained the plaintiff's contention that the findings were not supported by evidence. In the course of its holding, the Court held that the plaintiff had the right-of-way as a matter of law; and, after stating the rules quoted above, said: "There is no evidence as to the distance or time element that [the plaintiff], from his position on Elizabeth Street, could have observed the [defendant's] car as it approached the intersection. . . . The jury convicted [the plaintiff] of contributory negligence in failing to keep a proper lookout merely because he did not see the [defendant's] car coming towards him, without any evidence as to the distance when he could have first seen that vehicle as it proceeded [toward the intersection]."

■ We need not decide the effect of the absence of the stop sign on the question of right-of-way in our case. Mrs. Lawson was on Mr. McDonald's right as they approached the intersection, and for this reason, if no other, she had the right-of-way under our record under the provisions of Sec. 71(d), Article 6701d, Vernon's Ann.Tex.Civ.St. However, the critical elements of time and distance of the parties as they approached the intersection, which were lacking in the Samford case, are shown in our case, and are sufficient, as we have said, to have apprised a prudent driver that Mr. McDonald probably would not stop. Samford, therefore, is not controlling. We have given careful study to the other cases relied upon by the plaintiffs, and they, too, lack proof on these elements of time and distance, or simply show that there was no time for prudent evasive action, or are otherwise distinguishable on critical facts.

■ The plaintiffs' claim against the State of Texas is based upon provisions in Article 6252–19, Vernon's Ann.Tex.Civ.St., which, at the time in question, provided as follows:

"Sec. 3. Each unit of government in the state shall be liable for money damages for personal injuries or death . . caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of

government, if a private person, would be liable to the claimant in accordance with the law of this state. Such liability is subject to the exceptions contained herein . . .

"Sec. 14. The provisions of this Act shall not apply to . . . (12) Any claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice, or any claim arising from the removal or destruction of such signs, signals or devices by third parties except on failure of the unit of government to correct the same within such reasonable time, after actual notice . . . ."

As we have stated, the stop sign which would have faced Mr. McDonald at the intersection was removed by vandals at some unknown time after 3:00 P.M. on the day before the collision. The evidence shows without contradiction that the State replaced the sign immediately upon notice that it was missing, and the plaintiffs do not contend otherwise. Rather, they base their claim against the State upon the "condition" of the stop sign, under the first part of Sec. 14(12) of Article 6252–19, asserting that the sign was in a "dangerous condition" because it was easily removable, and that the State Highway Department was aware of this condition.

The evidence shows that the road signs controlling the intersection involved, including the stop sign in question, are attached to the single pole upon which each is placed with two U-bolts, and can be easily removed therefrom with a crescent wrench; and that the poles are not directly set in concrete, but are threaded onto a base near the ground, and can also be removed with a wrench. The signs and poles would be more difficult to remove if they were tack-welded. More time would be required to remove the signs if each was placed on two poles instead of one. The signs most often stolen by vandals are stop signs and signs giving road numbers. Sign vandalism at this intersection has been worse than at other intersections on FR 1604; and prior to the date in question vandals had stolen stop signs and other signs from the intersection, although there has been no established frequency of such vandalism. The proper officials of the State Highway Department are aware of all of these facts.

We do not believe the "condition" referred to in the statute relied upon by the plaintiffs was intended to refer to the State's installation or maintenance of a sign or signal insofar as ease of its removal by thieves is concerned. Rather, the term refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the traveling public. This must be so, inasmuch as there are other provisions in the statute expressly relieving the State from liability for claims growing out of the removal of signs, signals and devices by third parties without a reasonable time for replacement after actual notice to the State of the removal.

The State's motion for instructed verdict was properly granted.

The plaintiffs bring forward other points and contentions. Some are rendered immaterial in the light of the above holdings. The others are without merit. All are overruled. The crosspoint raised by the representative of McDonald's Estate is also rendered immaterial.

The judgment is affirmed.