The STATE of Texas, By and Through the STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Appellants,

v.

Maria C. GONZALEZ, Individually and as Representative of the Estate of Hilda Martinez, Deceased, et al., Appellees.

No. 13–97–237–CV.

Court of Appeals of Texas, Corpus Christi.

June 29, 2000.

Rehearing Overruled Aug. 17, 2000.

Dan Morales, Atty. Gen., Laquita A. Hamilton, Deputy Atty. Gen. for Litigation, William E. Williams, III, Asst. Atty. Gen., Grady Click, Asst. Atty. Gen., Susan Desmarais Bonnen, Asst. Atty. Gen., Jorge Vega, First Asst. Atty. Gen., Vanessa Ann Gonzalez, Asst. Atty. Gen., Austin, for Appellant.

Richard J. Karam, David Mcquade Leibowitz, Leibowitz & Yanta, San Antonio, Daniel Keith Worthington, McAllen, Marcos Fulop, San Antonio, for Appellee.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

J. BONNER DORSEY, Justice.

In February of 1987, Maria Alicia Gonzalez was driving on FM 3072 with her sister, niece and her children. She failed to stop at an intersection and crashed into another vehicle. All occupants of Gonzalez' vehicle, save one, died at the scene.

The survivors sued the State of Texas, through its Department of Transportation, alleging it was negligent in failing to maintain the stop sign at the intersection where the accident occurred. The jury found the State negligent, and the court entered judgment in favor of the plaintiffs. The State appeals by six points of error.[1]

The intersection of Texas FM 3072 and FM 2557 in Hidalgo County is normally controlled by stop signs on FM 3072. Traffic traveling east and west on FM 3072 must yield right-of-way to the north-south traffic on FM 2557. On the southwest corner of the intersection, a four to five feet high levee parallels FM 3072, creating a visual barrier preventing driv-

---

1. While its arguments are couched in terms of evidentiary sufficiency, the State argues that the way the law applies to the largely undisputed relevant facts of this case renders the State immune from liability. We address all the State's points of error, but have reorganized.

ers traveling east or north into the intersection from seeing one another until about thirty feet from the intersection. On February 8, 1987, Gonzalez drove her two sons, Anthony and Jonathan Rincones, her sister, Hilda Martinez, and her niece, Irene Rodriguez, on a family outing eastbound on FM 3072. They entered the intersection traveling approximately seventy miles per hour in mid-afternoon and collided with a van driven by Stanley Brock, who was northbound on FM 2557. The stop sign controlling east-bound traffic had been knocked down and was not visible to Gonzalez.[2] There is no evidence she tried to slow her car before impact. Gonzalez, her sister, niece, and son Anthony, died at the scene. Her son, Jonathan, and Brock and his passenger suffered minor injuries.

The evidence was that Texas Department of Transportation (DOT) had recent notice the intersection stop signs were the focus of repeated vandalism: on January 20, DOT employees discovered and repaired a downed stop sign without filing a report; on January 24, DOT employees discovered, reported, and repaired both downed signs; on January 31, again both signs were discovered and repaired by DOT employees, but without report; on February 2 or 3, both signs were again reinstalled with no report; on February 5, both signs were found down and reinstalled, with a report; on February 6, at least one of the signs was reinstalled and reported. On six occasions over a seventeen-day period, stop signs were found down or missing at the intersection; however, only four reports document the incidents.

DOT Assistant Maintenance Supervisor Raul Martinez ordered regular inspections of the intersection following the first incident in February. DOT also notified the Hidalgo County Sheriff's Department of the suspected vandalism and requested assistance in monitoring the intersection. The sheriff's department dispatcher pre-pared an "Immediate Extra Patrol" order for increased surveillance of the intersection.

On Saturday, February 7, DOT employee Jose Jackson observed the signs were all in place. Motorist Catherine Pearson testified she noticed the signs were down at 10:30 on the morning of the accident, but that she did not notify anyone. There were no reports to DOT of downed signs following the February 6 reinstallation.

### I. LIABILITY UNDER THE TORT CLAIMS ACT: IN GENERAL

This case is difficult to understand without first addressing the general principles for governmental liability under the Tort Claims Act for failure to maintain a street sign. See TEX.CIV.PRAC. & REM.CODE ANN. chap.101(Vernon 1997) (the "Act"). Several sections of the Act are relevant to this case. First, section 101.021 contains the general provision, outlining the only circumstances under which the State will waive sovereign immunity for premises liability. That section states that a governmental unit in this State is liable for:

> personal injury and death caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997).

Usually, claims arising from premises defects are limited by section 101.022, which provides that the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises. *Id.* at § 101.022(a). However, subsection (b) renders that limitation inapplicable to cases involving traffic signs, signals and devices. Specifically, the limitation does not extend to "the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is

---

**2.** Also, the westbound stop sign at the inter- section was missing.

required by section 101.060." *Id.* at § 101.022(b).

Section 101.060 deals with traffic signs, signals and warning devices. It states that the State retains its sovereign immunity for claims arising from:

> (1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device ...;
>
> (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or
>
> (3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

*Id.* at § 101.060. With this framework in mind, we turn to the State's points on appeal.

## II. LIABILITY FOR A "CONDITION"

The State contends that there is no evidence to support the finding of liability under section 101.060 of the Tort Claims Act. TEX.CIV.PRAC. & REM.CODE ANN. § 101.060 (Vernon 1997). We hold that liability was properly imposed under § 101.060(a)(2), and find the evidence legally sufficient to support the verdict. Subsection (a)(2), essentially, limits the government's liability for maintenance of road signs to instances when it has failed to take corrective action within a reasonable time after receiving notice of the condition of the road sign. *Id.*

The statute reads that the State retains sovereign immunity for:

> the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the re-

sponsible governmental unit within a reasonable time after notice.

*Id.*

■ The State argues that the "condition" at issue is the condition of a downed stop sign. The plaintiffs take the position that the "condition" at issue is the sign's very recent history of being the subject of extraordinarily frequent vandalism. They argue that the State had adequate notice that the condition of that stop sign was such that it was capable of being repeatedly vandalized, and that the frequent downings of the sign caused an unreasonably dangerous condition. Under these particular facts, we agree.

The question is, can the repeated vandalism of a stop sign be considered a "condition" for purposes of section 101.060(a)(2). The Texas Supreme Court held in *Lorig v. City of Mission,* 629 S.W.2d 699, 701 (Tex.1982), that a stop sign's obstruction from view by trees or branches is such a "condition." The court also held that a traffic light altered by the city to show a red arrow instead of a red light constituted a "condition." *Sparkman v. Maxwell,* 519 S.W.2d 852, 857–58 (Tex. 1975). The courts of appeal have held that a light that simultaneously showed green to drivers traveling in different directions could be such a condition, *State v. Norris,* 550 S.W.2d 386, 390 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.), and even a dangerous intersection which did not have an appropriate traffic signal at a dangerous intersection could be considered such a condition. *Zambory v. City of Dallas,* 838 S.W.2d 580, 582 (Tex.App.—Dallas 1992, writ denied).

The Texas Supreme Court has held that the term "refers to either an intentional or an inadvertent state of being." *Sparkman v. Maxwell,* 519 S.W.2d 852, 858 (Tex. 1975). In *Sparkman,* the court held that where the city had notice of a problematic condition, as defined, it could be liable. *Id.*[3]

---

**3.** We note that some disagreement has arisen regarding whether or not the term "con-

dition" also means the manner in which the light or device was originally installed, if

The dictionary defines the term "condition" to mean "a particular mode or state of being of a thing." OXFORD ENGLISH DICTIONARY 785 (1971). When statutory words are not defined, they should be given their plain and common meaning. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1989); *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). If we substitute that definition into the statutory language, the statute reads that it applies to situations involving "the particular mode or state of being of a traffic or road sign, signal, or warning device." It is fair to say that the "state of being" of the stop sign at issue in this case was that it was the subject of repeated vandalism. Thus, we hold that the condition of being the subject of repeated and extraordinarily frequent vandalism can be a condition for purposes of section 101.060(a)(2) liability. *See also City of Baytown v. Peoples*, 9 S.W.3d at 396–97 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (holding that exclusive method for determining tort claims act liability for malfunctioning traffic signal was under 101.060(a)(2)).

Further, we find the evidence to be sufficient that the State failed to correct the condition within a reasonable time after receiving notice of it. The evidence at trial showed that during a seventeen day period prior to the accident, the sign had been vandalized and downed six times. The evidence also showed that the State failed to take any action to correct the condition until the sign was downed the sixth time—the last time before the accident. All previous times, the State merely re-installed the stop sign in the same manner as before, leaving it susceptible to the known vandalism problem. We believe the jury was within its province to find that the State's failure to take corrective action was unreasonable. Thus, the State's liability for failing to correct the condition of that sign under section 101.060(a)(2) was supported by legally sufficient evidence.

### III. LIABILITY FOR REMOVAL OR DESTRUCTION BY THIRD PARTY

Next, the State argues that the plaintiffs presented no evidence that it had actual knowledge that the particular sign at issue was down prior to the accident. However, actual knowledge that the stop sign was down again is not necessary for recovery. The condition of the sign, that it was repeatedly frequently removed by third parties, is covered by the waiver of immunity under subsection (a)(2), for which actual knowledge is not required. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1997).

Subsection (a)(3) governs liability for the removal or destruction of a sign by third parties. It states that a governmental unit is not liable for:

the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

that manner creates a problem. *See Lawson v. Estate of McDonald*, 524 S.W.2d 351, 356 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.) ("condition . . . refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the traveling public" and not its susceptibility to vandalism); *Creek v. Texas State Dep't of Highways & Pub. Transp.*, 826 S.W.2d 797, 802 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (adopting the definition in *Lawson* ); *but see City of Denton v. Mathes*, 528 S.W.2d 625, 630 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.) (holding that condi-tion included an intended, if dangerous, cycling of a traffic light). However, while we agree with the broader definition, we find the distinction between the two views not critical to the outcome of this case. The condition of the stop sign complained of by plaintiffs was created not by the manner in which the sign was initially installed, but by the manner in which it was continuously re-installed. The condition was also "created" by the frequent incidences of vandalism which put the State on notice that the method of initial installation might be inadequate at this intersection.

*Id.* at (a)(3). Under subsection (a)(3), the governmental unit would not be liable for a sign removed or destroyed by vandals unless it had actual notice of the vandalism and failed to act within a reasonable time after receiving notice. *Id.* This section protects the State from being liable for a condition that it had no way of anticipating. While the State might have reason to know of or anticipate a general malfunction or faulty condition of a traffic device as contemplated by subsection (a)(2), in normal circumstances, the State would have no reason to anticipate destruction or removal of a sign by vandals. That is the reason that subsection (a)(3) requires actual notice that third parties have removed or destroyed the device and a reasonable time for replacement before liability can attach.

 However, the mere fact that destruction or removal of a sign by third parties is addressed by subsection (a)(3) does not preclude liability under (a)(2) when vandalism is involved, especially under unique facts such as those presented here. The State may be found liable under (a)(2) in a case of vandalism that is so severe and pervasive it constitutes a "condition" of the sign, signal or traffic control device. Where a particular sign or intersection is the target of repeatedly frequent vandalism, the governmental unit has a duty to respond to the frequency. The State cannot absolve itself by arguing that even though that sign had been vandalized seven times in the past twenty days, because it did not have actual knowledge that the sign was down on that particular day, it may not be liable. Rather, liability may be imposed under (a)(2) without a showing that the State had actual knowledge that the sign was down on the day of the accident. We overrule the State's third point of error.

## IV. APPLICABILITY OF THE DISCRETIONARY FUNCTIONS EXCEPTION

 The State argues that the discretionary functions exception bars liability under any theory, relying on section 101.056 of the Act. TEX.CIV.PRAC. & REM. CODE ANN. § 101.056 (Vernon 1997). Section 101.056 applies to the entire Act and states that sovereign immunity is not waived when the act or omission complained of is a discretionary function of the State. *Id.*

 The question of whether an act or omission is discretionary is one of law for the court to decide. *State v. Miguel,* 2 S.W.3d 249, 251 (Tex.1999). An act is "discretionary" if it involves "personal deliberation, decision, and judgment." *Loyd v. ECO Resources, Inc.,* 956 S.W.2d 110, 124 (Tex.App.—Houston [14th Dist.] 1997, no writ). The supreme court has noted that the purpose of that provision is "to avoid a judicial review that would question the wisdom of a government's exercise of its discretion in making policy decisions," explaining:

> The interests to be served by these provisions are several e. g., effective, unfettered performance of officials in making policy decisions and the maintenance of the separation of powers between the executive, legislative, and judicial branches of government.

*State v. Terrell,* 588 S.W.2d 784, 787 (Tex. 1979). The distinction has been explained to mean that if the negligence that causes injury lies in the formulating of policy, the government is immune from liability; however, if the negligence occurs in the carrying out of a policy, the government may be liable. *Id.; accord City of Brownsville v. Alvarado,* 897 S.W.2d 750, 754 (Tex.1995); *City of El Paso v. W.E.B. Investments,* 950 S.W.2d 166, 170 (Tex.App.—El Paso 1997, pet. denied).

The supreme court has held that the design of any public work, including a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decision. *State v. Rodriguez,* 985 S.W.2d 83, 85 (Tex.1999). In *Rodriguez,* the supreme court held that the design of a detour around a highway construction

site was a discretionary act because it involved the same type of policy-level decisions as that of designing a roadway. *Id.* at 86. The placement of the warning signs along the detour was also held to be a discretionary function. *Id.*

In a similar case, the supreme court held that the decision to warn of a missing freeway guardrail with barrels and signs was a discretionary function. *State v. Miguel,* 2 S.W.3d 249, 251 (Tex.1999). In that case, the department of transportation had placed barrels in front of a section of an elevated exit ramp's missing railing to serve as a temporary warning device. *Id.* at 250. The driver's van struck the barrels, hurdled over an eighteen inch concrete parapet wall, and fell about sixty feet to the ground. *Id.* However, the court alluded to the fine distinction to be drawn between discretionary and nondiscretionary functions in this type of case:

> The State contends that the decision to warn of the missing guardrail with barrels and signs is discretionary. We agree. Respondent's allegations are based on the State's *decision to use* barrels, not upon any claim that the State negligently placed the barrels.

*Id.* at 251 (emphasis in original). The court explained that the maintenance crew was merely carrying out the policy of the State because the barrel and sign warning system chosen by the crew complied with the department of transportation's Manual on Uniform Traffic Control Devices. *Id.* Thus, the court held that the *decision* to warn rather than repair was discretionary, and the *decision* to use barrels and signs, as opposed to another warning device, was discretionary. *Id.*

■ In contrast, when a governmental unit fails to *maintain* public works, such as a storm drainage system, or street and storm sewers, those activities are not discretionary functions. *See City of Fort Worth v. Gay,* 977 S.W.2d 814, 817 (Tex. App.—Fort Worth 1998, no pet.) (holding city not immune from liability where claims were based on the City's failure to

maintain, clean, and inspect an area of the street). In this case, the State contends that the plaintiffs' arguments that the sign should have been repaired in a manner to correct its susceptibility to vandalism are impermissible attacks on a discretionary function. However, we believe that this can fairly be classified as "maintenance" of a safety device system already installed at the intersection rather than "design" of a safety device system to be implemented at the intersection. Accordingly, we hold that section 101.056 does not bar suit under these facts. The State's first point of error is overruled.

## V. Factual Insufficiency

By its fourth point, the State argues that the evidence was factually insufficient. However, its argument presupposes that subsection (a)(3) is the only method for imposing liability under the facts of this case. Their arguments all emanate from the position that "actual knowledge" is required to impose liability under subsection (a)(3). Because we have held that liability was properly imposed under subsection (a)(2), and that actual knowledge that the sign was down on the day of the accident is not required under that subsection, we overrule the State's point relating to factual sufficiency.

## VI. Incurable Jury Argument

■ Next, the State argues that plaintiffs' counsel committed incurable jury argument by urging the jury to "send a message to Austin" and by stating that "thirteen dollars of the State's 2.7 billion dollar transportation budget for 1987 should have been spent for one hour of overtime inspection or for painting the word 'stop' on the roadway." The State reasons that ways of making the sign less susceptible to vandalism—*i.e.,* having someone work overtime to drive by and inspect the intersection or painting "Stop" on the road—are policy-level functions. Because the State is immune for discretionary acts, the State argues that counsel's jury argument invited the jury to

consider imposing liability on an improper basis. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (Vernon 1997) (immunity for discretionary acts). Because we find that evidence referred to was relevant for another permissible purpose, we disagree.

Obviously, to sustain a point urging improper and incurable jury argument, the first thing an appellant must prove is that the argument was erroneous. *See Vickery v. Vickery*, 999 S.W.2d 342, 365–66 (Tex. 1999). We do not believe that counsel's argument was error, much less incurable error. We have held that the cause of action at issue is the State's liability for failing to correct within a reasonable time the condition of a traffic sign, signal or warning device. The plaintiffs introduced evidence regarding ways that the condition of that sign could have been corrected. That evidence was relevant to the issue of whether the governmental unit corrected the condition of the sign within a reasonable time in that it showed what types of corrections could be made and how burdensome it would be to make those corrections. Because we find no error, we overrule.

### VII. SPOLIATION INSTRUCTION

By its final point of error, the State contends that the trial court erred in submitting an instruction on spoliation of evidence. In this case, the leader of the "sign crew" who had been dispatched repeatedly to repair the sign at the intersection had kept a diary containing information regarding when the sign had been in need of repair prior to the Gonzales accident. He testified at trial that he misplaced the diary, and first realized it on the day the accident occurred. Plaintiffs requested, and were granted, a jury instruction regarding spoliation of evidence. The jury was instructed:

> With respect to actual knowledge, if any, of the Defendant ... you are instructed that if a party fails to produce evidence within its control or intentionally destroys evidence, a presumption is raised that the evidence not produced or destroyed would be unfavorable to the party not producing or destroying the evidence.

We hold that the error, if any, in submitting the instruction regarding spoliation, was harmless. *See* Tex.R.App.P. 44.1. As we have previously explained, the issue of whether the State had actual knowledge that the sign had been downed the day of the accident was not required in order to find liability under section 101.060(a)(2) for the "condition" of the sign. Tex.Civ.Prac. & Rem.Code Ann. § 101.060(a)(2). The State admits that the sign was vandalized numerous times in the days leading up to the accident. We have held that evidence to be legally and factually sufficient to support the jury's finding that the State's failure to correct the condition of the sign allowing it to be susceptible to vandalism was unreasonable. The instruction on spoliation was relevant to the issue of whether the State had actual notice the sign was down before the accident as required by § 101.060(a)(3). We hold, therefore, that any error in submitting the instruction on spoliation was harmless.

We overrule the State's sixth point of error and AFFIRM the judgment of the trial court in all respects.