82 S.W.3d 322 (2002)
The STATE of Texas, by and through the STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Petitioner,
v.
Maria C. GONZALEZ, individually and as representative of Hilda Martinez, Deceased, et al., Respondent.
No. 00-1007.
Supreme Court of Texas.
Argued November 14, 2001.
Decided June 27, 2002.
Rehearing Denied August 29, 2002.
*324 John Cornyn, Attorney General, Andy Taylor, First Assistant Attorney General, Jeffrey S. Boyd, Susan Desmarais Bonnen, Grady Click, William E. Williams, III, S. Kyle Duncan, Office of the Attorney General, Austin, for Petitioner.
Richard J. Karam, Law Office of Richard J, Karam, W. Wendell Hall, Renee Forinash-McElhaney, Rosemarie Kanusky, Fulbright & Jaworski, Marcos Fulop, David McQuade Leibowitz, Law Offices of David McQuade Leibowitz, San Antonio, for Respondent.
Justice BAKER delivered the opinion of the Court.
This wrongful-death case involves a fatal highway collision that occurred at an intersection where vandals had repeatedly removed stop signs. The issue is whether the Texas Tort Claims Act ("the Act") waives the State's immunity for claims arising from the accident, which allegedly happened because unknown third parties removed the intersection's stop signs. A jury determined that the Texas Department of Transportation's negligence proximately caused the accident, and the trial court rendered judgment on the verdict. The court of appeals affirmed, holding that a stop sign's susceptibility to "repeated and extraordinarily frequent vandalism can be a condition for purposes of section 101.060(a)(2) liability." 24 S.W.3d 533, 537. We disagree.
*325 We conclude that section 101.060(a)(2) does not apply in this case and thus does not waive the State's immunity. We further conclude that section 101.060(a)(3) of the Act is the section that does apply. However, because there is no evidence that TxDOT had actual notice that someone removed the stop signs before the accident occurred, TxDOT's immunity from suit is not waived in this case. Accordingly, we reverse the court of appeals' judgment and render judgment that the plaintiffs take nothing.

I. BACKGROUND
On Sunday, February 8, 1987, Maria Alicia Gonzalez was driving eastbound on FM 3072 in Hidalgo County. At the intersection with FM 2557, Maria's car collided with a northbound van driven by Stanley Brock. Maria and three passengers died at the scene. A fourth passenger, as well as Brock and his passenger, suffered minor injuries.
Usually, the intersection has two stop signs facing FM 3072, which require traffic on that road to yield the right-of-way to traffic on FM 2557. However, when the accident occurred, the stop signs were missing, because vandals had allegedly knocked them down or removed them. Maria, who was unfamiliar with the intersection, did not stop, yield the right-of-way, or slow down.
At least six times during the seventeen-day period before the accident, vandals had knocked down or removed the intersection's stop signs. Each time TxDOT received notice about the vandalized signs, it promptly reinstalled or replaced them. In response to the repeated vandalism, TxDOT ordered regular inspections at least twice a day on weekdays. TxDOT also asked the Hidalgo County Sheriff's Department to help monitor the intersection at night. However, TxDOT did not change the methods it used to reinstall or replace the signs, and it did not order its employees to perform overtime inspections during weekend hours.
TxDOT reinstalled at least one stop sign at the intersection on Friday, February 6. An off-duty TxDOT employee, who drove through the intersection on Saturday afternoon, testified that he observed both stop signs in place. However, at around nine-thirty on Sunday morning, a motorist who testified at trial noticed that no stop signs stood at the FM 2557 intersection. But, because the motorist had never driven through the intersection before, she did not realize that the intersection should have had stop signs facing FM 3072. Consequently, she did not notify TxDOT about the signs' absence.
The accident occurred around two-thirty in the afternoon on Sunday, February 8. Soon after, TxDOT received notice that the stop signs were down. In response, TxDOT dispatched a maintenance crew to reinstall the signs. The crew completed its work within two hours.
Several plaintiffs, individually and as representatives of the estates of the deceased ("Gonzalez"), sued TxDOT under the Act. Gonzalez alleged: the repeated vandalism to the intersection's stop signs constituted a "condition" under section 101.060(a)(2) of the Act; TxDOT had notice of the condition but did not correct it within a reasonable time; and TxDOT's negligence proximately caused the plaintiffs' injuries. TxDOT filed a plea to the jurisdiction, asserting that the Act does not waive immunity for Gonzalez's claims. The trial court denied the plea, and the case went to trial.
The trial court instructed the jury to find TxDOT negligent if: a premises "condition" posed an unreasonable risk of harm to Maria; TxDOT had actual knowledge of *326 the danger; Maria did not have actual knowledge; and TxDOT failed to use ordinary care to warn Maria about the condition or to make the condition reasonably safe. Over TxDOT's objection, the jury charge also contained a spoliation instruction about TxDOT's actual knowledge.
The jury found TxDOT negligent, and the trial court entered judgment for Gonzalez. The court of appeals affirmed the trial court's judgment. 24 S.W.3d at 540. The court of appeals recognized that section 101.060(a)(3) of the Act discusses the State's immunity when third parties vandalize signs. 24 S.W.3d at 538. But it held that the State's immunity was waived under section 101.060(a)(2), because the vandalism was "so severe and pervasive it constitutes a `condition' of the sign, signal or traffic control device." 24 S.W.3d at 538. Under these circumstances, the court of appeals concluded, the State "has a duty to respond to the [vandalism's] frequency." 24 S.W.3d at 538. The court of appeals also held that, under section 101.060(a)(2), a plaintiff need not show "that the State had actual knowledge that the sign was down on the day of the accident." 24 S.W.3d at 538. We granted TxDOT's petition for review to determine whether repeated vandalism is a "condition" for which subsection (a)(2) of the Act waives immunity.

II. APPLICABLE LAW

A. Tort Claims Act
The State's sovereign immunity from suit for tort claims is waived to the extent the Act creates liability. Tex. Civ. Prac. & Rem.Code § 101.025(a). The Act waives the State's immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem.Code § 101.021(2). However, the Act establishes various exceptions to this general waiver.
Section 101.056 excepts claims based on the State's discretionary policy decisions. Tex. Civ. Prac. & Rem.Code § 101.056(2). For instance, the Act does not waive immunity for decisions about highway design or what types of safety features to install, because these decisions involve the exercise of discretion. State v. Miguel, 2 S.W.3d 249, 251 (Tex.1999); State v. Rodriguez, 985 S.W.2d 83, 86 (Tex. 1999). Whether a governmental activity is discretionary is a legal question. Miguel, 2 S.W.3d at 251.
Section 101.060(a) provides additional exceptions. It states that the Act does not waive the State's immunity for claims arising from:
(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;
(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or
(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.
Tex. Civ. Prac. & Rem.Code § 101.060(a).
Under subsection (a)(1), the State retains immunity for discretionary sign-placement decisions. Rodriguez, 985 S.W.2d at 85. For instance, when traffic engineers decide where to place warning *327 signs around a detour, the State retains its immunity. Rodriguez, 985 S.W.2d at 86.
Under subsection (a)(2), the State retains immunity as long as it corrects a sign's defective "condition" within a reasonable time after notice. Thus, subsection (a)(2) requires the State to maintain traffic signs in a condition sufficient to perform their intended traffic-control function. See, e.g., City of Midland v. Sullivan, 33 S.W.3d 1, 12 (Tex.App.-El Paso 2000, pet. dism'd w.o.j.); Texas Dep't of Transp. v. Henson, 843 S.W.2d 648, 651 (Tex.App.-Houston [14th Dist.] 1992, writ denied); Lawson v. McDonald's Estate, 524 S.W.2d 351, 356 (Tex.App.-Waco 1975, writ ref'd n.r.e.). A traffic sign's "condition" may be "an intentional or an inadvertent state of being." Sparkman v. Maxwell, 519 S.W.2d 852, 858 (Tex.1975).
Under subsection (a)(3), the State retains immunity from suit if a third party removes or destroys a traffic sign, unless the State fails to replace the sign within a reasonable time after actual notice. See City of Dallas v. Donovan, 768 S.W.2d 905, 909 (Tex.App.-Dallas 1989, no writ). Whether the State has actual notice about a removed or destroyed traffic sign is a fact question. See Lorig v. City of Mission, 629 S.W.2d 699, 701 (Tex.1982).

B. Statutory Construction
In construing a statute, we try to determine and give effect to the Legislature's intent. Tex. Gov't Code § 312.005; American Home Prods. Corp. v. Clark, 38 S.W.3d 92, 95 (Tex.2000). We look first to the "plain and common meaning of the statute's words." Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex.1999) (quoting Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex.1998)). If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning. Fitzgerald, 996 S.W.2d at 865. Moreover, we determine legislative intent from the entire act and not just from isolated portions. Jones v. Fowler, 969 S.W.2d 429, 432 (Tex.1998). Thus, we "read the statute as a whole and interpret it to give effect to every part." Jones, 969 S.W.2d at 432.

C. Standard of Review
Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. Texas Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.1999). Whether a trial court has subject-matter jurisdiction is a legal question that we review de novo. See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.1998).
"No evidence" points are also legal questions. Tomlinson v. Jones, 677 S.W.2d 490, 492 (Tex.1984). "In reviewing a `no evidence' point, we must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary." Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.2001).
Finally, statutory construction is a legal question. City of Garland v. Dallas Morning News, 22 S.W.3d 351, 357 (Tex. 2000). Accordingly, we review statutory-construction matters de novo. El Paso Natural Gas Co. v. Minco Oil & Gas, Inc., 8 S.W.3d 309, 312 (Tex.1999).

III. ANALYSIS
Gonzalez argues that the court of appeals correctly applied section 101.060(a)(2) to determine that the Act waived TxDOT's sovereign immunity. According to Gonzalez, the stop signs' susceptibility to repeated vandalism is a subsection (a)(2) "condition." Moreover, Gonzalez argues, TxDOT knew that the signs were susceptible to repeated vandalism *328 but did not take corrective action within a reasonable time. Accordingly, Gonzalez urges that TxDOT breached its duty to maintain the signs' traffic-control function. See Henson, 843 S.W.2d at 651.
In response, TxDOT contends that the court of appeals erred in holding that section 101.060(a)(2) waives TxDOT's immunity. TxDOT asserts that subsection (a)(3) expressly applies here, because vandals removed the stop signs. And, according to TxDOT, it retains immunity from suit under subsection (a)(3), because there is no evidence that it had actual notice that the signs were down before the accident. Moreover, TxDOT contends that, even if subsection (a)(2) did apply, it would not waive immunity here. TxDOT reasons that a sign's susceptibility to vandalism depends on numerous discretionary decisions about how to place and install a sign, and about whether the State should use extra signs, warning devices, or inspection patrols to prevent repeated vandalism. Because the Act retains immunity for these discretionary decisions, TxDOT retains immunity here. See Tex. Civ. Prac. & Rem.Code § 101.056.

A. The State's Liability or Vandalized Stop Signs Under Section 101.060
Here, no one disputes that vandals removed the stop signs at the intersection where the accident occurred. However, the parties disagree about whether the court of appeals correctly relied on section 101.060(a)(2) to determine that the Act waived TxDOT's immunity. Based on the Act's plain language, we conclude that subsection (a)(3) expressly controls when third parties remove or destroy stop signs. Accordingly, we conclude that subsection (a)(2) does not apply here to waive the State's immunity.
In construing section 101.060, we begin with its plain language. See Fitzgerald, 996 S.W.2d at 865. Subsection (a)(3) expressly applies when third persons remove or destroy traffic signs, signals, or warning devices. Tex. Civ. Prac. & Rem.Code § 101.060(a)(3). Under this subsection, the State retains immunity unless it fails to remedy the removal or destruction within a reasonable time after actual notice. TEX. CIV. PRAC. & REM.CODE § 101.060(a)(3). Thus, subsection (a)(3) imposes a duty on the State to correct a sign's removal or destruction by a third person upon receiving actual notice. Here, Gonzalez's claims arise from an accident that allegedly occurred because a third person removed a stop sign. Thus, subsection (a)(3) expressly applies to determine TxDOT's liability.
Here, however, the court of appeals concluded that "severe and pervasive" vandalism constitutes a "condition" under subsection (a)(2). 24 S.W.3d at 538. Under subsection (a)(2), the State generally retains immunity from claims based on a sign's "condition" unless the State fails to correct the condition within a reasonable time after notice. Tex. Civ. Prac. & Rem. Code § 101.060(a)(2). For example, trees or branches obstructing a stop sign create a "condition" for which subsection (a)(2) may waive immunity. Lorig, 629 S.W.2d at 701. Likewise, faded pavement markings constitute a "condition" within subsection (a)(2)'s meaning. See Sullivan, 33 S.W.3d at 12.
Conversely, one court of appeals has concluded that a stop sign's susceptibility to easy removal did not constitute a "condition" for which the Act waives immunity. See Lawson, 524 S.W.2d at 356. In Lawson, two vehicles collided at an intersection where vandals had removed a stop sign. Several plaintiffs sued the State under an earlier version of subsection (a)(2), "asserting that the sign was in a `dangerous condition' because it was easily removable...." Lawson, 524 S.W.2d at 356. *329 Evidence produced at trial showed the State knew that vandals had repeatedly stolen signs at the intersection and that vandals could easily remove the signs using only a crescent wrench. Lawson, 524 S.W.2d at 356.
The Lawson court concluded that the term "condition" does not refer to whether thieves could easily remove a sign. Lawson, 524 S.W.2d at 356. Rather, the court explained, "condition" must refer to the State's "maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the traveling public." Lawson, 524 S.W.2d at 356. The court reasoned that this must be so, because the Act's former version also contained another provisionnow subsection (a)(3)which "expressly reliev[es] the State from liability for claims growing out of the removal of signs, signals and devices by third parties without a reasonable time for replacement after actual notice to the State of the removal." Lawson, 524 S.W.2d at 356.
We agree with the Lawson court's analysis. Nothing in the Act's plain language suggests the Legislature intended that subsection (a)(3) should control only claims arising from isolated or occasional vandalism, or that subsection (a)(2) should control claims arising from repeated or pervasive vandalism. Rather, under the Act's plain and common meaning, subsection (a)(3), not subsection (a)(2), expressly applies whenever a third person removes or destroys a traffic sign or signal. See Fitzgerald, 996 S.W.2d at 865.
Here, Gonzalez argues that TxDOT could have made the stop signs more "vandal proof" by changing installation methods, using additional signs or warning devices, ordering more inspection patrols, or establishing a twenty-four hour hotline to report downed signs. Even assuming these suggestions have merit, TxDOT retains immunity for such discretionary decisions under the Act. See Tex. Civ. Prac. & Rem.Code §§ 101.056, 101.060(a)(1); Miguel, 2 S.W.3d at 251; Rodriguez, 985 S.W.2d at 85. Gonzalez cannot characterize TxDOT's failure to make certain discretionary decisions affecting a stop sign's susceptibility to repeated vandalism as a failure to correct the sign's "condition" under subsection (a)(2) in order to sue under the Act. See Villarreal v. State, 810 S.W.2d 419, 421 (Tex.App.-Dallas 1991, writ denied) (refusing to characterize discretionary actions as maintenance actions). To do so would contradict the Legislature's express intent to impose liability in cases involving a third person vandalizing a traffic sign only if the State fails to correct the vandalized sign after receiving actual notice. See Tex. Civ. Prac. & Rem. Code § 101.060(a)(3); see also Lawson, 524 S.W.2d at 356.
In sum, we hold that under section 101.060's plain language, subsection (a)(3) expressly applies to claims arising from third-party vandalism. We reject the court of appeals' conclusion that a sign's "susceptibility to vandalism" is a "condition" under subsection (a)(2).

B. Actual Notice Under Section 101.060(a)(3)
Because section 101.060(a)(3) applies, TxDOT's liability depends on whether there is evidence that TxDOT had actual notice that the stop signs were down before the accident occurred and, if so, whether TxDOT failed to correct the problem within a reasonable time. See Tex. Civ. Prac. & Rem.Code § 101.060(a)(3). Here, the evidence shows that TxDOT replaced at least one sign at the intersection on Friday, two days before the accident. A TxDOT employee observed the signs still in place Saturday afternoon. Although a motorist testified that the intersection *330 lacked signs on Sunday morning, the day the accident occurred, she did not notify TxDOT. Moreover, TxDOT and sheriff department employees testified that, between the time TxDOT replaced the signs on Friday and the time when the accident occurred on Sunday, they received no reports that the signs were down again.
We conclude that there is no evidence to support a finding that TxDOT had actual notice that the stop signs were down before the accident occurred. See Bradford, 48 S.W.3d at 754. Gonzalez did not introduce any evidence showing that anyone had reported the signs were down before the accident. See Donovan, 768 S.W.2d at 909. And the evidence that TxDOT knew the signs had been repeatedly vandalized does not indicate, either directly or by reasonable inference, that TxDOT actually knew the signs were down before the accident occurred. See Martinez v. City of Lubbock, 993 S.W.2d 882, 886 (Tex.App.-Amarillo 1999, pet. denied) (applying section 101.021(2) of the Act, which waives immunity for premise-defect claims, and concluding that evidence of actual knowledge must "indicate (directly or via reasonable inference) that the City actually knew" about the specific condition that caused the accident). At trial, Gonzalez argued that a missing sign-repair logbook "created an inference of actual notice." Accordingly, the trial court included a spoliation instruction in the charge. TxDOT objected to the instruction and contends here that the missing logbook did not contain any information relevant to whether TxDOT had actual notice that the signs were down before the accident occurred, as subsection (a)(3) requires.
We need not decide whether the spoliation instruction was erroneous. That is because Gonzalez produced no evidence showing that the missing logbook would have contained any information relevant to the "actual notice" issue under subsection (a)(3). Consequently, the jury could not presume that the missing logbook contained unfavorable evidence.
Pedro Soto, the TxDOT sign worker whose logbook was missing, testified that he only recorded information about completed repairs in his missing logbook. Specifically, he explained that after he completed a job, he would write down the repair date, the time he arrived at the location, the type of sign he repaired or replaced, and the sign's location. When Soto filled up a logbook, he would turn it in to Raul Martinez, a supervisor. Martinez confirmed Soto's testimony that the missing logbook would not have contained any information about when Soto received notice that a sign was down.
TxDOT also introduced two entries from Martinez's logbook and the entry Soto made in his logbook the day the accident occurred. These entries show that Soto and Martinez only recorded information in their logbooks after they had completed repairs. Another TxDOT employee confirmed that workers used their logbooks to record completed repairs.
No evidence suggests that Soto's missing logbook would have included information relevant to whether TxDOT received actual notice that the signs had been removed or destroyed before the accident. Accordingly, the jury could not have presumed that the missing logbook contained information relevant to whether TxDOT had actual notice that the signs were down before the accident.

IV. CONCLUSION
Section 101.060(a)(3) expressly controls the State's liability when third persons remove or destroy stop signs. Moreover, a sign's susceptibility to repeated vandalism is not a "condition" under section *331 101.060(a)(2) for purposes of determining the State's liability. Here, there is no evidence that TxDOT had actual notice that the stop signs were down before the accident occurred. See Tex. Civ. Prac. & Rem.Code § 101.060(a)(3). Therefore, the Act does not waive TxDOT's immunity in this case. Accordingly, we reverse the court of appeals' judgment and render judgment that the plaintiffs take nothing. See Tex.R.App. P. 60.2(c).
Justice RODRIGUEZ not sitting.